(December 12, 1902.)

## PINE v. CALLAHAN.

### [71 Pac. 473.]

Guardian ad Litem—Nonresident of the State may be Appointed. In application for admission of will to probate, a nonresident may be appointed guardian *ad litem* for minor heirs.

Written Demand for a Jury Trial in Probate Court in Contested Will Cases Sufficient for Trial in District Court.—Where written demand is made in probate court for a jury trial in a case involving the contest of a will, and such demand is filed in'

the district court, it is sufficient to authorize the district court
in ordering a jury trial in that court, without further notice, as
required by section 4095 of the Revised Statutes.

CONFLICTING EVIDENCE.—Where it appears from the record that a sub-
stantial conflict in the evidence exists on the material issues in-
volved in the controversy, this court will not reverse the judgment
of the trial court.

JUROR DISQUALIFIED IF HE HAS AN UNQUALIFIED OPINION.—If it ap-
pears, on the examination of a juror, on his *voir dire*, that he has
an unqualified opinion on any material issue involved, a challenge
for that reason is properly sustained.

JUROR QUALIFIED IF HE HAS NO OPINION ON THE MERITS AND NO BIAS
OR PREJUDICE.—If it appears, from the examination of a juror on
his *voir dire*, that he has no fixed opinion as to the merits of the
controversy, and has no prejudice for or against any party to the
controversy, a challenge for cause should be overruled.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

The facts are stated in the opinion.

Cyrus Happy and Charles L. Heitman, for Appellants.

Sections 5782, 5783, and 5789 of the Revised Statutes: These
three sections are embodied in the chapter on guardian and
ward, and are general in their terms, objects and purposes and
so are sections 4095, 4096, relating to appointment of guardian
*ad litem* in civil actions, and will yield to any statutory pro-
visions having a special or limited purpose, in any proceeding
coming within the terms or objects of the latter. (Sutherland
on Statutory Construction, secs. 157-159; *Home for Inebriates
v. Reis,* 95 Cal. 142, 30 Pac. 205; *Ex parte Crow Dog,* 109 U. S.
556, 570, 3 Sup. Ct. Rep. 396.)   By section 5305 of the Re-
vised Statutes of Idaho, in the chapter on the probate of wills,
is to be found the provision of law defining who may appear
and contest a will, and how that contest may be waged.   A
devisee, legatee, heir or creditor may contest through their
guardians, or by an attorney appointed by themselves or by the
court for that purpose.   The court may, in its discretion, ap-
point some competent attorney at law to represent in all such
proceedings the devisee, legatee, heirs or creditors of the de-

cedent, who are minors and have no general guardian in the county, or who are nonresidents of the territory; and those interested who, though they are neither such minors or nonresidents, are unrepresented. (Section 5673 of the same chapter.) These statutes, relating to the special subject of probate of wills and probate proceedings, are identical with the statutes of California, not only as to language, but as to the subdivision under which they occur, and have been construed by the supreme court of that state repeatedly, and by the supreme court of the United States at least once. (*Estate of Scott,* 15 Cal. 220; *Ex parte Smith,* 53 Cal. 204; *Carpenter v. Superior Court,* 75 Cal. 596, 19 Pac. 174; *Robinson v. Fair,* 128 U. S. 89, 9 Sup. Ct. Rep. 30.) The minor children of the testator having had a general guardian residing in the county at the time Pine was appointed guardian *ad litem,* sections 5305, 5669 and 5673 of the Revised Statutes of Idaho, above referred to, made it his duty to appear for and represent his wards, and there was no occasion for appointment of a guardian *ad litem.* If circumstances required the court to appoint anyone to represent the infants in that proceeding, the one so appointed should have possessed the qualifications mentioned in those statutes, that is, he should have been an attorney. Pine was ineligible for the appointment on the further ground that he is a nonresident and actually out of the jurisdiction of the court. The statute does not in express terms prohibit the court from appointing a nonresident, nor does it expressly or by implication authorize such an appointment. But a general guardian, although required to give bond for the faithful performance of his duties, must be a resident and householder or freeholder within the state. (Rev. Stats., secs. 5829, 4938.) A guardian *ad litem* gives no bond, takes no oath to perform his duties, nor even to support the constitution—in fact, if he is not in the jurisdiction and under the control of the court appointing him, he is the most independent and irresponsible individual that was ever given by court power to jeopardize and sacrifice the interests of others. We ask, what could the court do, in the way of controlling the conduct of Pine? Absolutely nothing.

He can squander the estate of these wards in litigation, without pecuniary or personal risk to himself. He is beyond the reach of citation, attachment, fine and imprisonment. (*Knicker-bocker v. De Freest,* 2 Paige, 305; *Phillips v. Dusenberry,* 8 Hun, 350; *Bryant v. Livermore,* 20 Minn. 349.) Jury without jurisdiction: We contend that the jury was unauthorized to try the case. The right of jury trial in this proceeding is derived solely from the statute. That authority is stated in section 5308 of the Revised Statutes of Idaho, where it is expressly declared that the issues of fact raised in will contests "must, on request of either party in writing (filed three days prior to the day set for the hearing), be tried by a jury. If no jury is demanded, the court must try and determine the issues joined." No request was made in the district court by either party in writing for a jury trial. Proponents and defendants objected to the case being tried by jury and demanded that the issues be tried by the court. This motion was denied by the court and a jury impaneled, the court holding that a demand for jury in the probate court would be considered a demand for a jury trial in the district court. This case, having been appealed to the district court upon questions of both law and fact, the action had to be tried anew. (Rev. Stats., sec. 4840.)

John B. Goode and Willis Sweet, for Respondents.

Section 5789 of the Revised Statutes of Idaho makes it the duty of the guardian to appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose, and section 5669 of the Revised Statutes provides that: "At or before the hearing of petitions and contests for the probate of wills, the court may, in its discretion, appoint some competent attorney at law to represent, in all such proceedings, devisees, legatees, heirs or creditors of the decedent, who are minors and have no general guardian in the country," etc. It is submitted that this provision, while it gives the court the right to appoint some attorney to represent infants in a contest of this character, does not intend to take from the court its general power—where the interests of the

infants are involved—to make the appropriate order for such infants to become parties plaintiff in the suit, and to do so by a guardian *ad litem.* It seems, however, that the question of this appointment, and the jurisdiction of the court to make it, is absolutely settled by the provisions of sections 4095 and 4096 of the Revised Statutes. The functions of the office of a guardian *ad litem* are so entirely different from those of a general guardian that no analogous reasoning can be invoked, from the fact that the statute requires of the latter that he shall be a resident and householder or freeholder, within the state. The law does not, however, favor the appointment as guardian *ad litem* of an infant, a person unconnected with the infant. (3 Redfield on Law of Wills, 437.) While section 4840 of the Revised Statutes provides that upon an appeal to the district court upon questions of law and fact, no statement need be made, but that the action be tried anew, section 4841 requires that the pleadings, all notices, motions and other papers filed in the cause in the court below shall be transmitted to the clerk of the district court. The request for a jury, in writing, filed in the probate court was, therefore, as much before the district court as were the pleadings and other papers in the cause, and was filed with the clerk of the district court when the transcript and other papers in the cause were transmitted to him from the lower court. In prescribing the practice to be followed in trying contest of wills, section 5308 provides, among other things, that "any issue of fact raised, involving . . . . must on request of either party in writing (filed three days prior to the day set for hearing), be tried by a jury. If no jury is demanded, the court must try and determine the issues joined." This section is relied upon by counsel for contestees and appellants to maintain their contention that the court below had no right to impanel a jury in this case and that the jury was without jurisdiction. We submit that not only was no error committed by the district court in impaneling the jury, but that the statute, mandatory in its terms, made it an absolute duty, the request in writing having been actually filed with the clerk of the district court,

and still remained on file in that court from the time it and all other papers in the cause were transmitted from the probate court up to the time the case was called for trial in the district court. The statute makes no requirement as to serving notice of such demand upon any of the parties, but simply directs that such a request in writing be filed. This being done, the issue must be tried by a jury. (Idaho Rev. Stats., sec. 5308.) Challenging of jurors: The third and fourth errors assigned by contestees and appellants are upon the ruling of the court in sustaining contestant's challenge for cause, of Juror Mathews, and denying contestees' challenge for cause of Juror Sanborn. One of the principal issues in this case, to be submitted to the jury, was whether Judge Brady was competent to make a will on the fifteenth day of July, 1901. The point involved in the case of *State v. Wilmbusse,* was whether John Brady was on the fourteenth day of July, competent to make a dying declaration as to the man who murdered him. Mathews, upon examination on his *voir dire,* testified that he was on the jury in the case of *State v. Wilmbusse,* and heard the testimony as to Judge Brady's condition; that he thought at the time the dying declaration was made (a period of only a few hours prior to the time of the execution of the alleged last will and testament involved in this case), that Judge Brady was of sound mind; that he had heard nothing since to change his mind; that he held the same opinion still, and that it was an unqualified opinion. Upon this testimony the challenge was sustained, and, we submit, properly so. (Rev. Stats., sec. 4380; *United States v. Alexander,* 2 Idaho, 386, 17 Pac. 746.) The challenge of the juror Sanborn by defendants or contestees was denied by the court. The ground for this challenge was that Sanborn showed, in testifying upon his *voir dire,* the existence of a bias or prejudice in his mind toward the Catholic Church, and it is contended by counsel for appellants that this disqualified him as a juror. In their brief counsel for appellants cite section 7833 of the Revised Statutes, to sustain them in this contention. By an examination of that section it will be seen that it is applicable to the selection of

juries in criminal cases only. Section 4380 of the Revised Statutes provides for the selection of juries in other cases. Paragraph 7 of the last-named section provides as one of the grounds of challenge the existence of a state of mind in the juror evincing enmity against, or bias to or against, either party. This is entirely different from the language used in section 7833 in setting forth particular causes of challenge in criminal cases.

STOCKSLAGER, J.—This is an appeal from the district court of Kootenai county. From the record we gather the facts as follows: July 17, 1901, John C. Callahan filed in the probate court of said county a petition asking for the probate of an instrument purporting to be the last will of John C. Brady, deceased. This instrument purported to dispose of the estate of deceased, appointed T. J. Purcell testamentary guardian of the only children (minors) of deceased, and named John C. Callahan executor of the will. August 14, 1901, Frank Pine, a nonresident of Idaho, filed in the probate court a petition asking to be appointed guardian *ad litem* for said children, for the purpose of contesting said will on behalf of said minor children. At the time of filing said petition Frank Pine was a resident of the state of Iowa. Prior to the last-mentioned date the testamentary guardian had been appointed and qualified as general guardian of the children, having been so made while the children were in Kootenai county, where they, with the testator, resided at the time of his death, on July 17, 1901. This petition was granted, and Pine was appointed guardian *ad litem,* over the objections of the general guardian. Thereupon Pine filed his petition, contesting said will on three grounds: 1. Want of testamentary capacity; 2. Undue and fraudulent influence of one T. J. Purcell, a priest of the Roman Catholic Church; 3. Failure to execute the same according to law. This petition was signed and verified in the state of Iowa. The second ground of contest was withdrawn, after which John C. Callahan, as executor and proponent, and T. J. Purcell, as general guardian, answered the petition, denying each and every

allegation thereof. The cause was thereafter tried in probate court before a jury, which rendered special findings adverse to the will upon each and all the issues presented, upon which verdict the court, after denying a motion for a new trial, rendered judgment refusing to admit the instrument to probate. From this judgment an appeal was taken to the district court by said Callahan, as executor, and Purcell, as guardian, both as to law and fact. At the December term of the district court of Kootenai county a motion was made to dismiss the appeal, which was denied. On January 2, 1902, the cause was called for trial, defendants objecting to the selection of a jury for the reason that no demand had been made and filed three days, or at all, before that date for the trial by a jury. The court denied the motion. A trial was had, and special findings, in addition to a general verdict, were returned by the jury. A judgment was entered in favor of Frank Pine, guardian *ad litem,* against John C. Callahan, as executor, and T. J. Purcell, as guardian, as named in said proposed will, for his costs. A statement was settled and allowed by the court, motion for new trial overruled, and it is from the order overruling this motion that this appeal is taken.

We have a voluminous record from which to draw our conclusions, but the exhaustive and able briefs have been of much service to us in grouping the facts upon which to base our opinion. There are sixty-one assignments of error relied upon by appellants; but, as we read the record, the all-important question is whether the deceased, John C. Brady, was of sound and disposing mind at the time he made what purports to be his last will. The verdict rendered by the jury in the district court reads: "We, the jury sworn to try the issues in the above-entitled matter, hereby render our verdict and find for the contestant plaintiff. L. McLennon, Foreman." The special findings are as follows: "1. At the time of making and executing the will contested herein, was John C. Brady of sound and disposing mind, memory, and understanding, and capable of making and executing the will in question? Answer. No. 2. Did the testator, at the time he signed the will in question,

know what he was doing? Answer. Don't know. 3. Did the
testator, at the time he signed the will in question, know to
whom he was giving his property, and to whom he was giving
the guardianship of his children? Answer. Can't answer.
4. Had the testator, John C. Brady, at the time of the execu-
tion of the will in question, mind and memory sufficiently sound
to know and understand the business he was engaged in? An-
swer. No. 5. Did John C. Brady, at the time he signed his pro-
posed last will and testament, consent thereto and acquiesce
therein? Answer. Can't answer. 6. Was the said instrument,
purporting to be the last will and testament of John C. Brady,
deceased, signed, sealed, published, and disclosed to be the last
will and testament of said deceased in the presence of sub-
scribing witnesses? Answer. Can't agree. 7. Did the sub-
scribing witnesses, C. W. Dyer and G. E. Barker, at the re-
quest of John C. Brady, or at the request of James Graham, by
his direction or assent, in his presence, and in the presence of
each other, subscribe their names as witnesses to said proposed
last will and testament? Answer. Can't agree. L. McLennon,
Foreman."

The first assignment of error is based upon the ruling of
the court in denying defendants' motion to dismiss the petition
for contest filed by the alleged guardian *ad litem,* Frank Pine.

It is urged that the court had no power or jurisdiction to make
the appointment—first, "because the children had a general
guardian, residing in Kootenai county, in the person of T. J.
Purcell; that county was their place of residence, and they were
physically in the jurisdiction of the court, when the general
guardian was appointed; Pine was and remains a citizen of the
state of Iowa, hence not qualified for the appointment; and,
in addition thereto, there was no necessity for such appoint-
ment." It is urged that under the provisions of section 5669
of the Revised Statutes the court could only appoint a compe-
tent attorney at law as guardian *ad litem.* This section says:
"At or before the hearing of petitions and contests for the pro-
bate of will, . . . . the court may, in its discretion, appoint
some competent attorney at law to represent in all such pro-

ceedings the devisees, legatees, heirs, or creditors of the decedent, who are minors and have no general guardian in the county." As we construe this section of the statute, under certain conditions it would be the duty of the court to appoint a guardian *ad litem* for minor children, whether there was an application to make such appointment or not; that is, if it occurred to the court that the interests of minor children were involved in the litigation, and there was no general guardian, then the court is empowered by this section to protect their interests by the appointment of some competent attorney guardian *ad litem*. Section 4095 provides: "When an infant or an insane or incompetent person is a party, he must appear either by his general guardian, or by a guardian *ad litem* appointed by the court in which the action is pending in each case, or by a judge thereof, or a probate judge. A guardian *ad litem* may be appointed in any case, when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to represent the infant, insane or incompetent person in the action or proceeding, notwithstanding he may have a general guardian and may have appeared by him." Section 4096 provides: "When a guardian *ad litem* is appointed by the court or judge, he must be appointed as follows: 1. When the infant is plaintiff, upon application of the infant, if he be of the age of fourteen years, or, if under that age, upon the application of a relative or friend of the infant." Under the provisions of these sections of the statute we find no error in the appointment of a guardian *ad litem,* even though such guardian be a nonresident of this state; and the fact that there was a general guardian whose authority was unquestioned would not preclude the appointment of a guardian *ad litem* in case the court was satisfied that the interests of the minor children required it.

The second assignment is based upon the ruling of the court on proponents' and defendants' motion that the cause be tried by the court without a jury, for the reason that a demand for a jury in writing had not been made by the contestant, or any of the parties to this suit or proceeding, three days prior to the time set for the hearing thereof. Subdivision 4 of section

5308 says, in providing for the trial of cases of this character, any issues of fact "must, on request of either party, in writing (filed three days prior to the day set for the hearing), be tried by a jury. If no jury is demanded, the court must try and determine the issues joined. On the trial the contestant is plaintiff, and the petitioner is defendant." It is very earnestly urged by counsel for appellants that, notwithstanding the demand to try the cause in the probate court with the aid of a jury, and the fact that such demand was in writing and filed with the other papers in the district court, and thereby a part of the record of the case as it came from the probate court, yet, to justify the district court, or judge thereof, in ordering a jury, it was necessary to renew this demand in writing in said court. No authorities are cited by counsel for either party to this controversy bearing on this question. We think, with the written demand for a jury on file, either party was authorized to enforce its demands in the district court, and no notice was necessary to be given of such intention, and that there was no error in the ruling of the court on this motion.

From the record in this case we are informed that on the night of the fifth day of July, 1901, John C. Brady, who was the probate judge of Kootenai county, was shot in the face by one C. H. H. Wilmbusse, the ball entering just below the right eye, and ranging backward horizontally, and lodged at the base of the skull; that he was removed to the Sacred Heart Hospital at Spokane, Washington, on the night of the 5th of July, or morning of the 6th, and there remained until his death, which occurred on the seventeenth day of July, 1901.

Proponents' Exhibit "A" purports to be the will of John C. Brady, to wit:

"In the name of God, Amen: I, John C. Brady, of Rathdrum, Kootenai county, state of Idaho, of the age of thirty-six years, and being of sound and disposing mind and memory, and not acting under duress, menace, fraud, or undue influence of any person whatever, do make, publish, and declare this, my last will and testament, in manner following; that is to say: First. I desire my body decently buried with proper regard to my

station in life, the circumstances of my estate, and the rites of the holy Roman Catholic Church. Secondly. I direct that my executor, hereinafter named, as soon as he has sufficient funds in his hands, pay my funeral expenses and the expenses of my last sickness, and the allowance made to my two minor children. Thirdly. I give and bequeath to my two minor children, Arva Brady, aged seven years, and Elmer Brady, aged five years, all of my property, real, personal, and mixed, that I own at the time of my death, or that my estate may thereafter acquire, by operation of law or otherwise. Fourthly. I hereby nominate and appoint John C. Callahan, of Rathdrum, Kootenai county, Idaho, the executor of this, my last will and testament. Fifthly. I hereby nominate and appoint Rev. Thos. J. Purcell the guardian of my said two minor children, and direct that they be raised and cared for under his direction in some suitable Catholic institution, to be selected by the said Thomas J. Purcell. In witness whereof, I have hereunto set my hand and seal this fifteenth day of July, 1901.

(Signed)     "JOHN C. BRADY.     [Seal]"

Witnessed by G. E. Barker and C. W. Dyer, and filed August 14, 1901.

Proponents' Exhibit No. 3 purports to be the dying declaration of deceased, Brady, to wit:

"July 14th, 1901.

"State of Washington, } ss.
County of Spokane.

"I, John C. Brady, of Rathdrum, Kootenai county, Idaho, having my powers of mind, recollection, and senses, and believing I am at the point of death, and every hope of this world gone, and believing, as I do, that public necessity demands the preservation of the lives of the community by bringing man-slayers to justice, make this my dying declaration, under a solemn and religious sense of immediate impending dissolution, and declare and say that on the night of July 5th, 1901, about 10:30 o'clock P. M., C. H. H. Wilmbusse entered my office in the probate judge's office at Rathdrum, Kootenai county, state of Idaho. He said: 'Good evening, Mr. Brady. How do you

feel to-night?' I answered: 'Pretty fair. How are you?' He says: 'Take that in your old face'—and pulled out his pistol and fired. And the ball from the pistol struck me in the face. He then put the light out and left the office.

his

'(Signed)    JOHN C. X BRADY.

mark

"Witnessed by JOHN C. CALLAHAN,
"JAMES GRAHAM."

The condition of the mind of Judge Brady at the time he made the dying declaration and at the time of the will was the subject upon which much of the evidence in the case was directed. The contest of the will was based upon the theory that at the time it purports to have been executed deceased was in such condition mentally and physically that he was incapable of making a will. The evidence is conflicting on this question. The jury, after hearing all the evidence and instructions of the court as to the law of the case, rendered their general verdict in favor of contestant and respondent. The only two special findings returned by the jury indicate that it was unanimous on this question. This being true, under the well-settled rule of this court, where there is a substantial conflict in the evidence, and the trial court refuses to set the verdict aside, this court will not disturb its rulings.

The third assignment of error is based upon the ruling of the court to the challenge of George Mathews. In answer to a question on his *voir dire,* he stated that he was a juror in the Wilmbusse case and heard the testimony as to Judge Brady's condition at a certain time. "I hold the same opinion now that I had then." The court suggested to the juror that he had been asked a statutory question, whether he had an unqualified opinion, to which the juror answered, "Well, yes; certainly an unqualified opinion, at that time it was." The juror had testified that he believed, at the time the dying declaration was made, Brady was of sound mind. The fourth is based upon the ruling of the court overruling a challenge for cause to Jay Rand Sanborn as a juror. This juror answered, in his examina-

tion by Mr. Goode, counsel for respondent Pine, that he had no bias in the matter at all. On cross-examination, the juror testified that he "lived at Coeur d'Alene and had read a great deal—read everything, from time to time, that he saw published in the 'Review,' and thought he had read about it in other papers. Didn't remember to have seen published what purported to be the evidence introduced at the trial here. I have formed opinions at times, and expressed them. Read some more, and formed another opinion, and expressed that, and afterward read again, and reversed my opinion. I don't know how many times. To tell you the honest truth, I don't believe I have got an opinion now." Counsel for appellant here stated to the juror that "the nature of this controversy is whether the children of the deceased, Brady, shall be raised and educated in some Catholic institution of the selection of Father Purcell, or whether they shall not be. Now, have you any unqualified opinion or belief as to the merits of the action, the main question involved herein, based upon knowledge of its material facts, or some of them?" Counsel for respondent objected to the question, for the reason that the question is not involved in the pleadings. The objection was sustained. Counsel for appellant then asked the juror whether he had any bias or prejudice which would prevent him from sitting and trying this case fairly and impartially. Answer: "Well, it is a little complicated; but I am afraid I have a little prejudice. I don't know that I have any grounds for it much—any grounds for prejudice. I don't believe I want to sit on the jury, really." In answer to the question, "Does this prejudice you speak of exist against any parties to this controversy?" he said, "No, sir; not to any parties named. No, sir." We find no error in the ruling of the court on either of these assignments of error.

A number of other errors are assigned, mostly to the admission or rejection of evidence. We have examined them carefully, and in our view of the case it is unnecessary to pass upon them.

The judgment of the lower court is affirmed, with costs to respondent. It is so ordered.

Quarles, C. J., and Sullivan, J., concur.

### ON REHEARING.

Per CURIAM.—The petition for a rehearing presents no new point or question, but what was presented on the original hearing and considered by the court at the time of rendering its decision herein; and, after again carefully considering the points relied upon, we find no reason for changing our former views, and for that reason a rehearing is denied.