[Civ. No. 10167. First Appellate District, Division One.—June 10, 1936.]

In the Matter of the Estate of JOHN GILL, Deceased. EDITH GILL et al., Respondents, v. MABEL GREER, Appellant.

Charles A. Christin, William T. Eckhoff, John E. Manders and Thomas J. Keegan for Appellant.

Ross & Ross, M. Mitchell Bourquin and Clinton L. Markley for Respondents.

TYLER, P. J.—Appeal from a judgment revoking probate of a will after trial by jury. Mabel Greer, proponent and appellant, was sole beneficiary under the will contested. Contestants are the three sisters of John Gill, the decedent. He died testate, leaving an estate of about $42,000 and no surviving issue. The jury unanimously declared the contested will to be invalid, because at the time it was executed deceased was of unsound mind and because he was acting under the undue influence of appellant Mabel Greer. She challenges the sufficiency of the evidence to sustain the finding of the jury and also complains of the giving of one instruction, the refusal of another and the denial of her motion for a new trial. The record is voluminous, consisting of some thirteen hundred pages. As is usual in cases of this character the evidence is conflicting.

■ At the outset it may be stated that the rule that a verdict or finding will not be disturbed upon appeal where there is a real and substantial conflict of evidence on the issue of facts involved applies to litigation over the validity of wills as well as to any other kind of litigation. (*Estate of Doolittle*, 153 Cal. 29 [94 Pac. 240].) All questions of the weight of the testimony are exclusively for the jury and for the trial court. The rule is the same in will contests as in other proceedings; and a verdict and finding in such a case will not be disturbed when there is a real and substantial conflict upon the issues of fact involved. (*Estate of Snowball*, 157 Cal. 301 [107 Pac. 598].) ■ A will is obtained under undue influence where improper pressure or other unfair conduct has overcome the volition of the testator, resulting in his executing a paper which represents, in fact, not his will but that of the person exercising the influence over him. (*Estate of Stoddart*, 174 Cal. 606 [163 Pac. 1010].) ■ Where the evidence establishes that the will is unnatural and that the beneficiary conspired with others to take advantage of the testator's weakened condition, a finding of unsoundness of mind or undue influence, or both, is justified. (*Estate of Jones*, 166 Cal. 108 [135 Pac. 288].) In considering the question of the sufficiency of the evidence the jury is warranted in believing as true all of the evidence in support of contestant's claims, unless it is inherently so improbable as to be unworthy of belief, and in disregarding as untrue all the evidence of proponent which is in any way contradicted or

otherwise impeached. Guided by these principles we are of the opinion that the evidence fully supports the finding of the jury that decedent was of unsound mind and that the will was procured through the undue influence of appellant. No claim was made that deceased was insane in the strict and popular sense of that word, but it was and is claimed that at the time the will was executed, and long prior thereto, he was in a stuporous condition, unable to speak or to know or understand what was going on around him, and in no mental capacity to make a will.

It appeared in evidence that John Gill, the decedent, was born in England about seventy years prior to the execution of the will in question. He was unmarried at the time of his death and was survived by three sisters, two married and one (Edith) a spinster, living in England. Some ten months prior to his death, the appellant, Mabel Greer, had acted as Gill's housekeeper at his home in Daly City, for which services she was paid $20 a month in wages. Gill had been ailing for some time and was stricken with his last sickness on February 19, 1933, and died March 22, 1933. The will in question was made on his deathbed, two days prior to his death. There is evidence to show that during his last sickness appellant was endeavoring to have deceased make his will, and had requested one Ewers, a friend of long standing of the deceased, to assist her, promising to reward him for his efforts. Appellant testified that Gill had informed her he desired to make a will, and requested that a certain justice of the peace be sent for, but he could not be located. A Mrs. Burkett, from whom appellant purchased groceries, volunteered to procure her attorney to draw the will. The attorney was sent for and he testified he drew the will according to instructions received from the deceased, and that he was of sound and disposing mind. He further testified that at his suggestion Mrs. Burkett was appointed the executrix. Ewers, one of the witnesses to the will, testified that the deceased was practically dead when he signed the instrument; that he could not talk and his eyes were glassy. Dr. Walker, who saw and examined the deceased on Saturday afternoon, the day before the will was made, testified unequivocally that Gill was of unsound mind and in a stupor, too far gone to respond when spoken to or to understand anything, and was then dying from retention of urine and interference with the

function of the kidneys, which hospitalization might have arrested. The doctor left orders for his removal to a hospital, but appellant, though told that Gill would surely die unless something was done to arrest his condition, failed to carry out the doctor's orders. The doctor also testified that Gill's condition was progressive, and that any interruption of his stupor, or a lucid interval, under the circumstances was impossible. Constant draining and injections to clear the blood, in the opinion of the doctor, offered the only hope of recovery, but even under the most favorable reaction to this treatment, had it been performed, it would have required a week or so to relieve Gill of his stuporous condition. The doctor catheterized Gill and removed about a quart of urine, which was decomposed and contained pus, from the bladder. As heretofore stated, this was the condition of Gill the day before the will was executed. It also appeared that two days before that time Gill was visited by his landlord and his wife, and later in the day by Matthew Benn, a teller from the San Francisco Bank. All three of the witnesses had known Gill for some time. The landlord and his wife both testified that they concluded from Gill's condition that he was not of sound mind. They tried to get him to talk, but he only moaned, and could not answer. It also appeared that appellant was endeavoring to obtain some money from Gill's bank account. A check had been made out, but the bank had refused to cash it because of the irregularity of the signature. The bank dispatched Mr. Benn, the teller, to Gill's home to ascertain his condition. He rode out with Mrs. Burkett, the executrix, and she informed Benn that Gill was very sick; that she felt he was dying, and that he was in dire need of money for medicine and food. This was the day prior to the execution of the will. Benn testified that upon his visit Gill did not utter a single word while he was in the room, a period of four or five minutes. At Gill's bedside Benn was asked by appellant or Mrs. Burkett whether he would advance two hundred dollars rather than one hundred called for by the check. Gill at that time was oblivious to the entire transaction. In face of the plea for medicine and food Benn cashed a check for one hundred dollars upon the understanding that no more money would be paid to them until a guardian had been appointed. This witness testified that Gill did not utter a single word during his presence; that he

looked very, very ill and had great difficulty in breathing. The testimony of Benn contradicted that of appellant, who testified that .Gill had conversed with the witness. Ewers, a friend of Gill's for many years and one of the subscribing witnesses to the will, had been with Gill constantly during his last illness and testified that fourteen days prior to Gill's death he could hardly speak and ceased holding any conversation with anyone; that for the last week or eight days he recognized no one, and to inquiries addressed to him he made no response whatever; that during this period he had nothing to eat except coffee on gauze put between his lips; that he was practically dead for a week prior to the making of the will, and at the time of its execution he was of unsound mind. Appellant seeks to impeach the testimony of Ewers with the assertion that he made a demand for money from the executrix of the estate, and had made inconsistent statements as to the state of mind of the deceased at the time of the execution of the will. Unless it appears that a witness' testimony is inherently improbable, the jury, or trial judge sitting in place of a jury, is the exclusive judge of his credibility, and although impeaching evidence in the nature of contradictions or otherwise has been received, it is still not only the right but the duty of the jury to determine to what extent it will believe or disbelieve the testimony of the witness thus assailed. (*Estate of Russell,* 189 Cal. 759 [210 Pac. 249] ; 27 Cal. Jur., p. 182.) There was, as above indicated, other testimony to the same effect as that given by Ewers. It further appeared in evidence that the deceased was very fond of his youngest sister, and some six weeks before his death he had told a friend that he intended making a will leaving her all of his property, as she had been so kind and attentive to their mother in her lifetime. It also appeared that deceased had sent his youngest sister money from time to time and had assured her that he would look out for her as long as she lived. There was further testimony to the effect that deceased mistrusted and disliked his housekeeper and desired to get rid of her as he was of the opinion she was after his money. We do not deem a further review of the evidence to be necessary. It is manifest from what we have said that there was abundant evidence to show, beyond doubt, that the deceased was for days prior to the execution of his will of unsound mind and in a stuporous condition, unable to speak

or understand what was going on about him; that this condition was progressive and that he could not have enjoyed a lucid interval. The evidence is also sufficient to show that appellant procured the making of the will. Under all these circumstances we cannot disturb the verdict upon the grounds advanced by appellant. With the conflict in the evidence we have nothing to do. From a reading of the entire evidence it would seem that the jury reached a proper conclusion. (*In re Ross*, 173 Cal. 178 [159 Pac. 603]; *Estate of Jones, supra; Estate of O'Connor*, 51 Cal. App. 339 [196 Pac. 792].)

■ Appellant complains of the refusal of the trial court to instruct the jury as to the difference between medical unsoundness and unsoundness of mind in a legal sense. There was no evidence that justified the giving of the instruction. No claim was made that deceased was of unsound mind in the popular acceptation of that term, the only claim being that due to illness deceased was in a stupor and had no conception of what was going on around him at the time of the execution of the will. ■ Nor was there any abuse of discretion of the trial judge, as claimed, in refusing to grant a new trial on the ground of newly discovered evidence. The claimed evidence was merely cumulative upon the question of the condition of the mind of the testator and was known to appellant at the time of the trial. ■ And finally, it is claimed that the court erred in instructing the jury that a majority of them could return a verdict. The record in this connection reads: " . . . when and as nine of you or a majority of the jury" have agreed, etc. It is claimed by respondents that the mistake was a result of a stenographic error as the six lawyers engaged in the case were all present when the charge was read and it had not challenged the attention of any of them. However this may be, the error was harmless as it could not possibly affect the rights of appellant.

Special issues were submitted to the jury. The first was whether contestants were the sisters of the deceased; (2) at the time of the execution of the purported will, dated March 19, 1933, was decedent, John Gill, of sound mind; (3) was said purported will procured through the undue influence of Mabel Greer; (4) was said purported will procured through the undue influence of Augusta Burkett. To the first special issue the jury answered unanimously "Yes"; to the second

533

they answered unanimously "No"; to the third they answered unanimously "Yes"; to the fourth they answered unanimously "No". It thus appears that the jury was unanimously against appellant on all the issues which affected her claim. The attorneys for appellant had it within their power to make the verdict more certain by polling the jury and thus ascertaining whether the verdict was lawful. Failure to challenge the regularity of a verdict in this respect when it is returned into court will be held to preclude one from raising any objection thereto. (*Kosak* v. *Boyce*, 185 Wis. 513 [201 N. W. 757]; *Dick* v. *Heisler*, 184 Wis. 77 [198 N. W. 734]; *Bentson* v. *Brown*, 186 Wis. 629 [203 N. W. 380, 38 A. L. R. 1417]; *Waters* v. *Markham*, 204 Wis. 332 [235 N. W. 797].)

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 6, 1936.