[S. C. No. 65. Second Appellate District, Division One.—July 22, 1938.]

In the Matter of the Estate of JESSIE CASHION, Deceased. JAMES ANGUS CASHION, Respondent, v. EDWIN L. CARTY, Administrator With the Will Annexed, etc., et al., Appellants.

690

Charles F. Blackstock for Appellants.

Hindman & Davis and E. Eugene Davis for Respondent.

YORK, P. J.—Jessie Cashion, aged 58 years, died on April 14, 1936, in Los Angeles County, leaving a last will and testament dated July 14, 1934, by which she bequeathed to her son, the respondent herein, a diamond ring, and devised and bequeathed to her daughter, the appellant Jean E. Flanagan, all the rest of her property, both real and personal. Charles E. Pearce, who was named therein as executor thereof, having predeceased the testatrix, the appellant Edwin L. Carty was duly appointed as administrator with the will annexed, the nomination of said son and daughter to that effect having been duly filed, and the will was admitted to probate on May 18, 1936. Thereafter, to wit, on October 19, 1936, respondent son filed his contest and petition for revocation of the probate of the said will upon the ground, among others, that testatrix at the time she executed her will was not mentally capable of making a valid will. Appellants, the proponents of the will, filed their answer in opposition to such contest and upon the issue so joined the cause was heard by the trial court sitting with a jury. During the course of the trial all questions were disposed of upon motion for nonsuit, except one issue which the trial judge in his instructions to the jury stated as follows:

"The one issue before you is whether or not Mrs. Cashion during the very day she made this will, on the 14th day of July, 1934, was or was not of sufficient mental capacity and

competency to make such a will, and that is the only question you have to determine."

At the close of its deliberations, the jury returned the following special verdict:

"1. Was the will which is in evidence in this proceeding executed by Jessie Cashion as and for her last will and testament? Answer: Yes.

"2. Was said will the free and voluntary act of Jessie Cashion? Answer: No.

"3. Was Jessie Cashion of sound and disposing mind and memory and mentally capable of making a will on July 14, 1934, at the time said will is claimed to have been executed? Answer: No.

"4. Did she understand the nature of the act she was about to perform? Answer: No.

"5. Did she have in mind those persons who were the natural objects of her bounty? Answer: Yes.

"6. Was she able to remember the nature and extent of her property? Answer: No.

"7. Was she able to understand the manner in which she wished to dispose of her property? Answer: No.

"8. Was she able to determine to whom she wished to leave her property? Answer: Yes.

"9. At the time said will was signed was Jessie Cashion under the influence of intoxicating liquor to such an extent as to render her mentally incapable of executing a will and incompetent to do so? Answer: Yes."

From the judgment entered pursuant to said verdict revoking the probate of the will and terminating the appointment of the administrator with the will annexed, this appeal is prosecuted by proponents, the said administrator and the said daughter of testatrix.

█ It is here urged that the verdict is not sustained by the evidence, and that the court erred in instructing the jury on the question of undue influence and in propounding to the jury a question as to whether or not the will was the free and voluntary act of testatrix after the court had already granted a motion for nonsuit on the question of undue influence.

Evidence was produced by respondent to the effect that his mother, the testatrix, was a chronic alcoholic and that by reason of the continuous and excessive use of intoxicating

liquor, she was unable to carry on a coherent conversation; that she was unable to concentrate; that she mumbled when she talked and shook when she walked; that she was spasmodic and would start to do one thing and forget it and start something else; that her mind wandered; that she could not carry on an intelligible conversation except for a few minutes at a time, and that she was not normal.

While witnesses for appellants admitted the constant use by testatrix of intoxicating liquor, evidence was introduced to the effect that testatrix always talked intelligently and coherently even when drinking and under the influence of liquor; that her memory was good, that she was a very sensible and shrewd woman; a wonderful cook and that she habitually prepared the family dinner, both with and without the help of her servants; that she was a woman who loved her home, went out very little, and had a large circle of friends and relatives, who were constant visitors in her home, and that she appeared normal and of sound mind.

From the foregoing *résumé,* it is readily apparent that the testimony adduced at the trial was directly conflicting on the question of mental competency of the testatrix, and that therefore her mental state on the day she executed the will was a question of fact for the jury, to be determined from all of the evidence presented.

There is evidence from which the jury could infer that testatrix was not only mentally incompetent on the day when she executed her will but also that she was habitually in such a state of intoxication as to be incapable of executing a valid will.

It was held in the *Estate of Gill,* 14 Cal. App. (2d) 526, at 528 [58 Pac. (2d) 734] : " . . . the rule that a verdict or finding will not be disturbed upon appeal where there is a real and substantial conflict of evidence on the issue of facts involved applies to litigation over the validity of wills as well as to any other kind of litigation. (*Estate of Doolittle,* 153 Cal. 29 [94 Pac. 240.] . . . )  All questions of the weight of the testimony are exclusively for the jury and for the trial court.  The rule is the same in will contests as in other proceedings; and a verdict and finding in such a case will not be disturbed when there is a real and substantial conflict upon the issues of fact involved. (*Estate of Snowball,* 157 Cal. 301 [107 Pac. 598].) . . . In considering the question

of the sufficiency of the evidence the jury is warranted in believing as true all of the evidence in support of contestant's claims, unless it is inherently so improbable as to be unworthy of belief, and in disregarding as untrue all the evidence of proponent which is in any way contradicted or otherwise impeached.''

Guided by the principles enunciated in the cited case, it is obvious that the evidence supports the verdict of the jury that testatrix had not sufficient mental capacity to make the will here in question on the day she signed the same.

In view of the fact that the trial court in his instructions to the jury directly called attention to the single issue to be determined by it, no prejudicial error was committed by the court when he gave an instruction on the question of undue influence after a motion for nonsuit as to that issue had been granted.

The judgment is affirmed.

Doran, J., and White, J., concurred.