(No. 6740.   March 29, 1940.)

In the Matter of the Estate of CATHERINE A. BROWN, Deceased. CORA I. CARLETON, CASS DEWITT, ALPHA ARCH, MARY L. SMALL and the Seven Children of MARTHA ARNO, Deceased (Contestants), Respondents, v. CHESTER E. PLUMMER and JESSE K. ROBINSON (Proponents), Appellants.

[101 Pac. (2d) 11.]

James S. Bogart, Walter Griffiths and Caldwell and Troxell, for Appellants.

Scatterday & Scatterday, F. W. Jarvis and George Donart, for Respondents.

BUDGE, J.—A petition for an order admitting to probate an instrument purporting to be the last will and testament of Catherine A. Brown, deceased, was filed December 23, 1936, in the probate court of Canyon county by appellants. January 21, 1937, Cora I. Carleton and others, heirs at law of Catherine A. Brown, respondents herein, filed a petition contesting the probate of said will, setting forth that the instrument filed as her last will and testament was not the will of said Catherine A. Brown, for the reason that at the date of its purported execution the testatrix was mentally incompetent to execute a will; and that the execution of said purported will was obtained by undue influence exerted upon the testatrix by the beneficiaries thereunder.

Upon trial of the issues, before the probate court, judgment was entered upholding the validity of the will and directing the entry of an order admitting the will to probate, and on the same day an order was entered, embodying in the one instrument, an order admitting the will to probate and an

order appointing executor. A further order was entered directing delivery of the property to the executor.

An appeal was taken August 10, 1937, by contestants and respondents herein, the notice of appeal reciting it was taken from the judgment made and entered August 2, 1937, admitting the will to probate, and from the order made and entered on said date admitting the will to probate, and from the order made and entered appointing Chester E. Plummer executor of the last will and testament of Catherine A. Brown, deceased, and also from the order directing the special administrator to deliver to Chester E. Plummer, the executor, all property belonging to said estate.

A motion was then filed by proponents of the will to dismiss the appeal and the court on May 9, 1938, entered its order denying the motion. The cause was thereafter tried in the district court sitting without a jury. Among other things, the court found that the said will was not the will of the deceased for the reason that at the time of its execution decedent was not competent to make a will, was not of sound and disposing mind, and further found that she was induced to make the purported will as a result of undue influence by Chester E. Plummer and Emma Plummer acting in connection with their attorney, James S. Bogart; and that the execution of said will was not her free and voluntary act, and that had she been free from undue influence, she would not have signed the purported will. Based upon such findings, the court entered conclusions of law in like tenor and entered judgment vacating the order admitting the will to probate and all orders of the probate court based thereon, and further adjudged that the instrument be rejected and denied probate and the petition for probate be dismissed. From the judgment so entered, this appeal was taken.

Appellants by their first four specifications of error urge that the district court was in error in refusing to dismiss the appeal or appeals taken by respondents to the district court, such motion having been based upon the contention that four separate appeals were actually taken and only one

undertaking furnished, that being a cash deposit in the amount of $100 placed with the clerk of the court.

It would seem unnecessary to determine whether one or more appeals were taken. A cash deposit with the clerk in the amount specified for an appeal was posted in lieu of an undertaking as is provided for by section 11-405, I. C. A.:

"The undertaking on appeal must be in writing and must be executed on the part of the appellant by at least two sureties, to the effect that the appellant will pay all damages and costs which may be awarded against him on the appeal or on a dismissal thereof, not exceeding $100, or that sum must be deposited with the clerk with whom the judgment or order was entered to abide the event of the appeal."

Section 15-1509, I. C. A., makes applicable to appeals from the probate to the district court with reference to "Administration of Estates" the provisions of titles 5 to 12 of Idaho Code Annotated, the section providing:

"Except, as otherwise provided in this title, the provisions of titles 5 to 12, inclusive, are applicable to, and constitute the rules of practice in, the proceedings mentioned in this title."

Section 11-203, I. C. A., which is one of the sections included within the titles mentioned in the foregoing section 15-1509, I. C. A., provides:

" . . . . If any undertaking be insufficient or defective in any respect, such insufficiency or defect shall be deemed waived unless the respondent, within twenty days after the filing of such undertaking, shall file and serve upon the appellant or his attorney a notice, in writing, pointing out specifically the defects and insufficiencies of such undertaking. No defect or insufficiency not thus specifically pointed out shall subsequently be urged against the undertaking or the appeal. The appellant may, within five days after such service of said notice, file a new undertaking which shall be in lieu of the one previously filed."

Since the enactment of the foregoing statute in 1907 (1907 Sess. Laws, p. 134) this court has construed the provisions thereof in several cases, reiterating the rule that

where an appeal is taken from two or more orders and only one bond is given which is insufficient to satisfy the requirements of both appeals, or which does not specify to which appeal it is applicable, the defect is waived unless an exception is taken within twenty days as provided by section 11–203, I. C. A. (*Martin v. Wilson,* 24 Ida. 353, 134 Pac. 532; *Clear Lake Power etc. Co. v. Chriswell,* 31 Ida. 339, 173 Pac. 326; *Cupples v. Stanfield,* 35 Ida. 466, 207 Pac. 326; *Caldwell v. Mountain Home,* 49 Ida. 32, 285 Pac. 1020.) Appellants herein, not having, within twenty days after the posting of the cash bond, served upon respondents herein, or their attorneys, a notice in writing pointing out the defect or insufficiency of such cash deposit, waived the insufficiency of, or defect in, said undertaking; and the court did not err in refusing to dismiss the appeal on the ground urged.

The remaining assignments of error question the sufficiency of the evidence to support the finding and conclusions with respect to undue influence having been exercised and the lack of testamentary capacity on the part of the deceased, and the judgment vacating the order admitting the will to probate and denying probate.

The sufficiency of the evidence to sustain a finding on the issue of undue influence, or to pass upon alleged error in respect to this issue, need not be considered in view of the conclusion hereinafter reached, that the court's finding that the deceased lacked testamentary capacity when she attempted to make the alleged will, is supported by the evidence. (26 Cal. Jur., sec. 356, pp. 1101, 1102; *In re Baker's Estate,* 176 Cal. 430, 168 Pac. 881.)

However, it may be conceded, without so determining, as respondents themselves in effect so concede, that the evidence is insufficient to support a judgment setting aside the will on the sole ground of undue influence, inasmuch as the evidence of undue influence is not to the effect that particular provisions of the will were placed therein because of undue influence, but that of procuring the testatrix to attempt to make a will when she was not competent to do so. Re-

spondents on page 28 of their brief state as follows with reference to this phase of the case:

"It is not our understanding that it was the decision of the Court that the Will was executed by reason of undue influence. That is to say, that the particular provisions of the Will were placed therein because of undue influence, but that the undue influence consisted wholly in wrongfully inducing the testatrix to attempt to make a Will.

"Upon the question of undue influence we are inclined to concede that if it had been the judgment of the Court that the Will should be set aside because of undue influence that it would not be sufficiently supported by the evidence. The evidence, however, is ample and abundant to prove undue influence in procuring the testatrix to attempt to make a Will."

The court's findings disclose that the court determined and adjudged that the instrument offered for probate was not the last will and testament of Catherine A. Brown, deceased, for the reason that at the time of its purported execution she lacked sufficient testamentary capacity legally to execute a last will and testament; and further that the deceased's attempt to make a will, when she lacked sufficient testamentary capacity, was procured by undue influence. There is substantial evidence to support the findings and conclusion with reference to undue influence in the respect above referred to. Mr. Bogart, attorney for the Plummers and a witness for appellants, testified that he went to see Mrs. Brown, while she was in the hospital, at the instance of the Plummers; and after Mr. Plummer had told him that Mrs. Brown had not made a will, and had told Mr. Jarvis that she did not want a will, in answer to Mr. Bogart's question, "Has she made a will?" admitted that he stayed with the deceased with the express purpose of inducing her to make a will, the will here in question resulting. Such testimony and the court's findings and Conclusions No. IX, that the Plummers, the principal beneficiaries under the purported will, and their attorney, Mr. Bogart, visited the said decedent with great frequency up to and until the execution of said purported will, and No. X, that decedent's said mental

and physical condition existed and continued continuously until the time of her death, and that she was induced to make the purported will by reason of the undue influence exerted upon her by the Plummers and Mr. Bogart, acting through Mr. Bogart, and its execution was not her free and voluntary act, at least corroborates to a degree the court's finding, that deceased lacked testamentary capacity, and at least explains why she attempted to make the will.

In a similar case, *In re Doolittle's Estate,* 153 Cal. 29, 94 Pac. 240, 241, the court said:

"There was other evidence, some of which is hereinbefore referred to, tending to show that the appellant, and not Doolittle, was the moving party in having the will made. Indeed it is highly probable that if the deceased had not been 'roused and spoken to,' and the making of the will pressed upon him, it never would have been made. The fact is significant—outside of the question of undue influence, which is not raised here—for, if the purpose of making the will had originated with the deceased, and he had, of his own motion, carried that purpose into effect, those facts would have been important evidence to the point that notwithstanding his feeble and dying condition he still had the will power and the mental capacity to make the will. But if he was merely the passive, half-conscious assenter to the dictation of another person, that fact would be consistent with and corroborative of the want of testamentary capacity found by the court."

With reference to testamentary capacity, it may be conceded there was evidence that the deceased had sufficient testamentary capacity to make a valid will, several witnesses testifying to such effect. On the other hand, at least eight witnesses testified to opposite effect.

Love Miller Smith, a widow, who had known Mrs. Brown for some twenty-five years, had lived on Mrs. Brown's place for four years and visited with her at least weekly, continuing a very close association with her beginning in 1920, spending week-ends with her for a good many years, and thereafter visiting with her up until the time of her death,

on the average of once every two or three weeks; and who considered herself the most intimate friend of Mrs. Brown, testified that she found Mrs. Brown in a paralytic and deplorable condition and helped to move her to the hospital and there visited her daily and as often as three times a day. Mrs. Smith was asked whether or not, based upon her long and intimate acquaintance with Mrs. Brown, the condition she was in at the time she was brought to the hospital and the condition as observed on all occasions when she visited her at the hospital, she, Mrs. Brown, was mentally competent to execute a last will and testament and to understand and comprehend what she was doing, and the effect of the instrument she was signing; and whether she was competent to understand and comprehend what persons would be the natural objects of her bounty of the will, to which Mrs. Smith answered that Mrs. Brown was not. She stated that she based this opinion, among other things, upon her observation that two minutes after Mrs. Smith had helped bring Mrs. Brown to the hospital, Mrs. Brown did not know that she had seen Mrs. Smith.

Vinnie Bourland, a registered nurse of some thirty years experience, employed at the sanitarium, saw Mrs. Brown daily. She stated the attending physicians were Dr. Cole and Dr. Handford; that Dr. Cole visited Mrs. Brown at least twice a day and sometimes three times; that she once overheard a conversation between Mrs. Brown and the Plummers, in which Mrs. Brown stated that she guessed Dr. Cole came out to the hospital every day, but that he did not come in to see her; and, that as a matter of fact, Dr. Cole had visited Mrs. Brown twice that day.

This witness recalled Mr. Bogart's coming to see Mrs. Brown and that she asked Mrs. Brown who he was and Mrs. Brown stated she did not know. She further testified that she doubted very much whether Mrs. Brown had the capacity to realize what she was doing with her property at any time after she came to the hospital; that Mrs. Brown did not seem to remember that Mrs. Smith had brought her to the hospital or had visited her there; did not remember Dr. Cole

had been to the hospital; that after they were gone, following a visit, she did not seem to remember that they had been there. In answer to a question of testamentary capacity similar to that asked Mrs. Smith, the witness Bourland replied that Mrs. Brown did not have such capacity.

Sara E. Guthridge, likewise a nurse at the sanitarium, and who took care of Mrs. Brown, answered in the negative to a question of testamentary capacity such as was asked Mrs. Brown and Vinnie Bourland. She further testified that as Dr. Cole was leaving on the second morning after Mrs. Brown's arrival, he said he would bring Mrs. Smith out, to which Mrs. Brown stated: ''Why, I have not seen Love Miller Smith for years,'' Mrs. Smith being the woman who helped bring her to the hospital and who had visited her daily or oftener at the hospital; that frequently just after Dr. Cole had left her, Mrs. Brown would ask when Dr. Cole was coming to see her.

Dr. Cole, an acquaintance of Mrs. Brown for thirty years, and for her last ten years her family physician, gave as his opinion, based upon his medical work, and upon cases of like nature, his past acquaintance with the woman and observation of her from December 1st to December 12th, that on December 7th she did not have sufficient mind or mental capacity to comprehend intelligently the nature and effect of the will she was making, the estate or property she was undertaking to dispose of, or the relationship she had to the various persons who might expect to become the objects of her bounty; that she lacked the capacity to comprehend any of those things, and thus such capacity was lacking at all times after she was brought to the hospital.

Dr. Handford, an associate of Dr. Cole, testified from his observation of Mrs. Brown, that at no time from December 4th to the time of her death did she have sufficient mentality to comprehend intelligently the nature and effect of a will, the extent of property she was undertaking to dispose of, or the relationship she had to the various persons who might naturally be expected to become the objects of her bounty.

E. H. Plowhead, long and intimately acquainted with Mrs. Brown, took an acknowledgment of Mrs. Brown to a power

of attorney on December 5th and stated that in his opinion that, when he took the acknowledgment, he was very doubtful that she would be able to understand the nature of a will; that he was doubtful of her ability to comprehend and understand a question, and very doubtful as to whether she was in her full understanding and mental faculties.

Edwin C. Burke and John M. Holden, neighbors and close acquaintances of Mrs. Brown for many years, both testified positively without objection that she lacked the capacity to make a will.

Mildred Graves, the stenographer who typed the will, a witness for proponents, on cross-examination was asked if Mrs. Brown seemed to comprehend what Mr. Bogart was saying and she answered that she did not recall that Mrs. Brown made any answer; that Mrs. Brown had considerable difficulty making herself understood and that she, Miss Graves, had considerable difficulty understanding Mrs. Brown.

From the testimony of the foregoing witnesses, it appears beyond any question that there was substantial evidence that Mrs. Brown did not have testamentary capacity; there was a direct conflict upon this issue. The mental state of Mrs. Brown on the day she executed the instrument was a question of fact for the court, sitting without a jury, and the rule, that a finding or judgment will not be disturbed upon appeal where there is real and substantial conflict in the evidence on the issue of facts involved, applies to litigation over the validity of wills. In *In re Cashion's Estate,* 27 Cal. App. (2d) 689, 81 Pac. (2d) 628, 630, the court said:

"It was held in the *Estate of Gill,* 14 Cal. App. (2d) 526, at page 528, 58 Pac. (2d) 734, at page 735; ' . . . . the rule that a verdict or finding will not be disturbed upon appeal where there is a real and substantial conflict of evidence on the issue of facts involved applies to litigation over the validity of wills as well as to any other kind of litigation. *Estate of Doolittle,* 153 Cal. 29, 94 Pac. 240. All questions of the weight of the testimony are exclusively for the jury and for the trial court. The rule is the same in will contests as in other proceedings; and a verdict and finding in such a case will not be disturbed when there is a real and substantial conflict upon the issues of fact involved. *Estate*

*of Snowball,* 157 Cal. 301, 107 Pac. 598. In considering the question of the sufficiency of the evidence the jury is warranted in believing as true all of the evidence in support of contestant's claims, unless it is inherently so improbable as to be unworthy of belief, and in disregarding as untrue all the evidence of proponent which is in any way contradicted or otherwise impeached.'

"Guided by the principles enunciated in the cited case, it is obvious that the evidence supports the verdict of the jury that testatrix had not sufficient mental capacity to make the will here in question on the day she signed the same."

A like rule was announced by this court, with relation to whether a will was procured by fraud and undue influence in *Estate of Randall,* 58 Ida. 143, 70 Pac. (2d) 389, the court saying:

"The facts and circumstances submitted to the jury, as disclosed by this record, are such as might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character, the findings of the triers of fact should prevail." (Authorities cited.)

See, also, *Estate of Gill,* 14 Cal. App. (2d) 526, 58 Pac. (2d) 734; *Estate of Doolittle,* 153 Cal. 29, 94 Pac. 240.

"Where the appellant asserts as ground for reversal that the verdict is not supported by the evidence, a review of the evidence becomes necessary. As to the power of the appellate court, the rule is the same in respect of will contests as it is in regard to other proceedings; the sufficiency of the evidence to sustain the conclusions of the trial court is to be measured and tested by the general rules. All questions as to the weight of evidence and credibility of witnesses are deemed to be primarily for the determination of the trial court; and if there is any substantial evidence to support the conclusion of the court below, the reviewing court will not reverse the judgment, although it may be of the opinion that the preponderance of the evidence is in favor of the appellant's contentions."

See, also, *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473.

In view of the above rule, the evidence is sufficient to support the court's findings and judgment and the judgment is therefore affirmed. Costs awarded to respondents.

Morgan and Holden, JJ., concur.

Ailshie, C. J., and Givens, J., concur in the conclusion reached.