𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

WOODDY & OTHERS V. TAYLOR, EXECUTOR, & OTHERS.

March 13, 1913.

1. WILLS—*Undue Influence—What Constitutes—Burden of Proof.*—
Before undue influence can be made the ground for setting aside
a will, it must be sufficient to destroy free agency on the part
of the person executing the instrument. It must amount to
coercion—practically duress. It must appear to the satisfaction
of the court that the party had no free will, but stood *in vinculis;*
and the burden in such a case, as in a case where fraud is
charged, is always on him who charges undue influence.

2. WILLS—*Competency—What Constitutes—Presumption—Old Age.*—
The presumption of competency to make a will is not destroyed
by any extremity of age. Nor is incompetency established by
proving that the mind has been impaired by disease. It is not
necessary that the testator, at the time of making his will, should
retain all the force of intellect which he may have had at a
former period. If he still be possessed of mind sufficient to com-
prehend and advise as to the ordinary transactions of life, and
to give directions how his business shall be conducted and his
estate managed, he may be considered competent to make a will
disposing of his estate. Those who would impeach a will on the
ground that the decedent has become incompetent, must clearly
prove that incompetency to exist.

Appeal from a decree of the Chancery Court of the city
of Richmond. Decree for the defendants. Complainants
appeal.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg,* for the appellants.

*A. W. Patterson* and *S. S. P. Patteson,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The last will and testament of T. C. Wooddy, deceased, was duly proven and admitted to probate in the Chancery Court of the city of Richmond on the 10th day of June, 1910, and one week thereafter this bill was filed by the appellants, John P. Wooddy and Clayton J. Wooddy, seeking to impeach the will and have the same set aside upon the ground that the testator had been unduly influenced and was mentally incapable of making the will. There was an issue out of chancery to determine the question thus raised and a mass of evidence taken. The contestees demurred to the evidence, and the jury brought in a verdict in their favor, subject to the action of the court upon the demurrer. Upon due consideration the court entered a final decree sustaining the demurrer to the evidence, ratifying, approving and accepting the verdict of the jury, declaring the contested paper to be the true last will and testament of T. C. Wooddy, deceased, and dismissing the bill. From that decree this appeal was taken.

It appears that the testator was a citizen of Richmond, who died in June, 1910, at the advanced age of eighty-six, possessed of a considerable estate, and without lineal descendants. His wife died many years before his death. There were two children of the marriage, both daughters. One of these married E. Harvie Spence, a merchant of Richmond, and afterwards died without issue. The other daughter married a Mr. Bruce, and died leaving an only daughter, who married Josiah Vaughn, a druggist of Richmond.

The uncontradicted evidence shows that throughout all the years of his life, after Mr. Spence became his son-in-law and Mr. Vaughn became his grandson-in-law, the warmest and most cordial relations existed between them. They lived together most of the time, and when not actually living under the same roof their intercourse was almost daily and very intimate, the testator manifesting his interest in and affection for them in many ways. One of the

appellants was his nephew and the other his great-nephew. It satisfactorily appears that appellants, as well as other collateral kin, had seen comparatively little of testator, and that no kindly or intimate relations existed between them. Indeed, they seemed to have had very little knowledge of each other, although living in the same community.

On the 14th day of February, 1908, the testator made and executed his will, by which, after providing for his funeral expenses and debts, he made the following disposition of his estate:

"3rd Item: I give, bequeath and devise to my son in law, E. H. Spence, and my granddaughter, Annie C. Vaughn, wife of Josiah Vaughn, all the rest and residue of my estate both real and personal, after the payment of my just debts, in equal portions, share and share alike, and if my said granddaughter, Annie C. Vaughn, should die before I shall depart this life, I give, bequeath and devise to my grandson-in-law, Josiah Vaughn, the husband of the said Annie C. Vaughn, that portion of my estate which, in event of his surviving me, will go to my said granddaughter under the first portion of this clause."

4th Item: "Having the fullest confidence in the integrity of my hereinafter named executors, I have requested them to perform certain acts and do certain things, a memorandum of which acts and things is to be found in my private papers of which my executors know, I hereby enjoin them to carry out to the letter the terms of said memorandum."

5th Item: "I hereby appoint my son-in-law, E. H. Spence, and my grandson-in-law, Josiah Vaughn, executors of this my will and desire that no security be required of them as such."

The memorandum referred to in this bill consisted of a list of small legacies to charities and a number of personal friends, which were to be paid after his death, unless paid and marked off by him during his lifetime. The paper

shows that about half of these items had been paid and marked off at the time of the testator's death.

On the 23rd of September, 1909, the testator made and executed a paper which is designated as a codicil to his will, but which is in substance a new will, by which, after setting forth that E. H. Spence and Annie C. Vaughn had both departed this life, making the codicil necessary, he devises and bequeathes the portion of his estate which was intended for said E. H. Spence, to-wit: one-half thereof to Mrs. Bessie A. Spence, the second wife of his deceased son-in-law, and E. Harvie Spence, Jr., and Miss Mary D. Spencer, share and share alike, or one-sixth each, and gives the remaining half of the estate to Josiah Vaughn, the husband of his deceased granddaughter, and provides that should Vaughn not be living when he died, that the share intended for him should fall in with the other moiety of his estate and pass to Bessie A. Spence, Mary D. Spencer and E. Harvie Spence, Jr. In lieu of the fourth item of his will; he provides in the codicil for the small legacies which had been mentioned in the memorandum referred to in his will. He appoints his grandson-in-law and H. Selden Taylor his executors, and requests that no security be required of them.

In view of the long, intimate and devoted family relations that had existed between the testator and the chief objects of his bounty provided for both in the will of February, 1908, and the codicil thereto of September, 1909, and of the fact that he had no lineal descendants, and no collateral kin that he had ever manifested any special interest in, there was nothing unreasonable or unnatural in the disposition made by him of his estate.

Viewing the evidence in this case from the standpoint of a demurrer to the evidence, we are of opinion that the appellants have failed to sustain the allegations of their bill, that the testator was incompetent to make the will and codicil thereto involved in this controversy, and that

he was constrained to make such disposition of his property by undue influence. The allegation that undue influence was exerted over the testator is without any evidence to sustain it. Before undue influence can be made ground for setting aside a will, it must be sufficient to destroy free agency on the part of the person executing the instrument. It must amount to coercion—practically duress. It must appear to the satisfaction of the court that the party had no free will, but stood *in vinculis;* and the burden in such a case, as in a case where fraud is charged, is always on him who charges undue influence. *Howard* v. *Howard,* 112 Va. 556, 72 S. E. 133.

The only evidence adduced by the contestants in support of the charge that undue influence was exerted over the testator was the testimony of one or two ladies, who say that they thought that Mr. Spence and Mr. Vaughn had considerable influence with the testator; and yet one of these witnesses, on cross-examination, says that the testator always did his own way; thought his way was right, and that he was an independent sort of man who did his own thinking. In the light of such evidence, it is needless to dwell longer upon the charge of undue influence.

As to the charge of mental incapacity, it is said in Robertson's Old Practice, vol. 3, p. 337, that "the presumption of competency is not destroyed by any extremity of age. *Browne* v. *Molliston,* 3 Whart. 137. Nor is incompetency established by proving that the mind has been impaired by disease. *Tompkins* v. *Tompkins,* 1 Bailey [S. C.] 92, 19 Am. Dec. 656. It is not necessary that the testator, at the time of making his will, should retain all the force of intellect which he may have had at a former period. If he be still possessed of mind sufficient to comprehend and advise as to the ordinary transactions of his life and to give directions how his business shall be conducted and his estate managed, he may be considered competent to make a will disposing of his estate. Kennedy, J., in *Kach-*

*line* v. *Clark,* 4 Whart. 320; *Temple, &c.* v. *Taylor,* 1 Hen. & Munf. 476. Those who would impeach the will on the ground that the decedent has become incompetent, must clearly prove that incompetency to exist."

The principles announced by this high authority have been repeatedly upheld by this court, the latest cases being *Howard* v. *Howard, supra,* and *Wampler* v. *Harrell,* 112 Va. 635, 72 S. E. 135.

The testimony offered, in the case at bar, to sustain the charge of mental incapacity is that of a number of ladies who claim to have been more or less intimate with the testator. They express the opinion that he was not competent to make a will, but, as was said in *Beverly* v. *Walden,* 20 Gratt. (61 Va.) 147, this is their opinion, but when we come to analyze their evidence we find that their opinions are not justified by the facts upon which they are based. The principal circumstances relied on to support the opinion expressed by these witnesses are that the testator was old, feeble and childish; that his memory was not good; that he would forget sometimes that he had read a letter and want it read again; that he was failing, just like old age coming; that he always wanted his own way; that he would sometimes wash his own clothes; that he would use rags for handkerchiefs; that on one occasion he came to his breakfast table with only his underclothes and a linen duster on, and on another occasion went on the lawn similarly attired; that he wore his clothes in a rusty and dilapidated condition, and a few other eccentricities of no greater moment than those mentioned. Most of these witnesses testify that he looked after his business; some of them say that he was interested in everything, and practically all of them unite in the statement that they thought his mind would come and go. To a number of them he gave checks for as much as $25 to $50 as presents. These checks were always accepted, and the opinion expressed that on such occasions his mind was all right. Two other

witnesses for the contestants are the appellant,. C. J.
Wooddy, and his brother, E. F. Wooddy. The former says
that in June, 1907, the testator read a newspaper notice of
the death of the witness' father, and that he got on a car,
rode over to Church Hill, walked about two blocks from
the car line to plaintiff's home, expressed sympathy, made
inquiries touching the financial condition of the decedent's
family, and gave witness a check for $50, and yet this wit-
ness expressed the opinion that at the time of the visit
mentioned the testator was not competent to make a will.
Later on, however, he says he would not say that testator
was crazy when at his house in June, 1907. He further
says that in October, 1909, he saw the testator and consid-
ered him incompetent because he spoke disparagingly of
baseball games and advised witness not to attend them.
The evidence of E. F. Wooddy, the brother of appellant, is
equally valueless and without weight as a basis for the
opinion that testator was incompetent to make the will
involved in this controversy. The only other witness was
Dr. Hinchman, who was introduced by the contestants as
an expert to show that testator had *senile dementia.* This
witness disclaims being an expert in such cases, but says,
in answer to a long hypothetical question asked by counsel
for contestants: "From your remarks about the case, that
is what we would call *senile dementia.*" This witness had
practically no acquaintance with the testator, had not seen
him for many years, and says that, having no personal
knowledge of the facts, he would have no right to question
at all the opinion of a doctor who knew him intimately and
had attended him as his family physician for more than
forty years.

Dr. Davis, introduced by the contestees, says that he
was the family physician of the testator for forty-eight
years and knew him intimately both professionally and
socially throughout that long period and to the night of

his death; that during all those years there was nothing abnormal about him; that his mind was perfectly normal; that he was eccentric and very indifferent about his dress and personal appearance, but that with ample opportunity to judge, he had never had occasion to suspect any impairment of his mental condition; that he was not in his dotage, did not have *senile dementia,* but died, as shown by the death certificate, of *angina pectoris,* which is a heart disease.

The evidence for the proponents not in conflict with that of the contestants abundantly shows that the testator was a strong-minded business man, who was very much given to doing his own thinking and insisting upon his own view in the management of his business affairs; that up to a period after the date of the execution of the papers in controversy he was attending actively and intelligently to his business affairs, dealing with real estate agents who collected his rents, making contracts, keeping his own bank account, drawing checks, and doing other things incident to the daily business life of a normal man who had business matters to attend to. The witnesses to the *factum,* who testified, and whose evidence in such cases is always of the first importance, and who are the only witnesses in this case who speak of the testator's condition immediately at the time of the execution of the papers in controversy, unite in the unqualified statement that both when the will and the codicil were executed the testator was all right, his mind very clear and perfectly good, and that he knew all about what he was doing.

Upon the whole case and with due regard to the rules applicable in the case of a demurrer to the evidence, we are of opinion that the contestants have failed to make out their case, and that the chancery court was plainly right in sustaining the demurrer to the evidence and dismissing the bill. The decree appealed from is, therefore, affirmed.

*Affirmed.*