## *In re* GETCHELL'S ESTATE.

1. WILLS—GENERAL TEST OF MENTAL COMPETENCY.
   In general it is requisite that the testator have, at the time
   he is making his will, sufficient mentality to enable him to
   know what property he possesses and of which he is making a
   testamentary disposition, to consider and know who are the
   natural objects of his bounty, and to understand what the
   disposition is that he is making of his property.

2. SAME—MENTAL COMPETENCY—PRESUMPTIONS—BURDEN OF SHOW-
   ING INCOMPETENCY.
   Mental competency on the part of a testator is presumed and
   the burden is on contestants to show that the testator was
   mentally incompetent to make a will (3 Comp. Laws 1929,
   § 14212).

3. SAME—MENTAL COMPETENCY—WEAKNESS OF MIND—FORGET-
   FULNESS.
   Weakness of mind and forgetfulness are not sufficient to in-
   validate a will if it appears that the testatrix's mind was
   capable of attention and exertion when aroused and was not
   imposed upon.

4. SAME—EXISTENCE OF TESTAMENTARY CAPACITY.
   Since the weak have the same right as the prudent and strong
   minded to dispose of their property, if testamentary capacity
   exists the court will not undertake to measure its degree.

5. SAME—MENTAL INCOMPETENCY AT TIME OF EXECUTION OF WILL.
   Mental incapacity must be established as of the time the will
   is made in order to invalidate it.

6. SAME—MENTAL COMPETENCY—EVIDENCE.
   In will contest, evidence sustained finding that testatrix was
   mentally competent to make a will notwithstanding evidence
   that the residuary legatee, a sister with whom testatrix was
   living at time will was executed, wrote many business letters
   for testatrix and signed her name thereto and took care of
   her books of account, statements that testatrix could not
   handle her business affairs and did not know her way around
   city where she had lived for over 50 years, confusion as to

certain property matters, failure to recognize old friends, and autopsy disclosed she was suffering from hardening of the arteries which may produce senile dementia in a person 80 years of age.

7. SAME—UNDUE INFLUENCE—CONTESTANT'S BURDEN OF PROOF—OPPORTUNITY.

To establish undue influence in the making of a will, contestants must show some act or acts which caused the testatrix to dispose of her property contrary to her desire, that she acted under such coercion, compulsion, or constraint that her own free agency was destroyed, and it cannot be established by proof of opportunity alone.

8. SAME—UNDUE INFLUENCE—EVIDENCE.

In contest of will executed by aged testatrix, evidence as to entry in her diary on day will was made and dissatisfaction with efforts of son, one of the contestants, at management of her property sustained finding that will did not result from exertion of undue influence.

Appeal from Lapeer; Sample (George W.), J., presiding. Submitted October 10, 1940. (Docket No. 46, Calendar No. 41,269.) Decided December 10, 1940.

In the matter of the estate of Ella Getchell, deceased. Herbert W. Smith presented the will of Ella Getchell for probate. Albert Getchell and Sue Jane Purcell filed objections thereto. Contest certified to circuit court. Contestants appeal from judgment for proponent. Affirmed.

*George W. DesJardins,* for proponent.

*Gerald J. Cotter* and *Ray D. Markel,* for contestants.

BUSHNELL, C. J. This is an appeal from the allowance of the last will and testament of Ella Getchell. Contestants are a grandson and granddaughter

of the testatrix. The beneficiaries under the will are Charles L. Scoutten, a brother of testatrix, Effie Tinker, a sister, who is the residuary legatee, and the contestants, as the heirs of their deceased father, Walter Getchell. Mrs. Getchell executed the will on February 26, 1936, and died on August 6, 1938, at the age of 80.

The issues of mental incompetence and undue influence raised by contestants and decided adversely to them by the circuit judge, sitting without a jury, are renewed on appeal.

The testatrix and her husband, the late Dr. Albert T. Getchell of Mt. Pleasant, made a separation agreement in 1922. She remained at their home in Mt. Pleasant until 1932, after which she lived with her son Walter and his family on a farm nearby for a short while, and then moved with them to Detroit, where she owned an apartment house. In 1935, Mrs. Getchell went to Lapeer, where she lived until her death with her sister, Mrs. Effie Tinker, the residuary legatee.

The testimony produced by contestants may be summarized as follows: A letter from Effie to Walter in 1934, and her conversation regarding Mrs. Getchell's poor memory and mentality; the fact that Effie wrote many business letters for testatrix, signed Mrs. Getchell's name thereto, and took care of her books of account; statements that Mrs. Getchell could not handle her business affairs and did not know her way around Mt. Pleasant, where she had lived for over 50 years; and her confusion as to certain matters pertaining to her property. Some witnesses said she failed to recognize friends of old standing, attempted to sell property that she had deeded to others, and claimed ownership of certain personal effects that were not her own. A physician, who performed an autopsy, testified that Mrs.

Getchell had hardening of the arteries and that hardening of arteries may produce senile dementia. Emphasis is placed upon circumstances surrounding a guardianship petition filed by Walter in Isabella county in 1935. Contestants claim that the attorney who drew the will agreed that, if the Isabella proceedings were discontinued, steps would be taken to have a guardian appointed for Mrs. Getchell in Lapeer county. Such an agreement was denied by the attorney in question.

As to undue influence, contestants produced testimony to show that the testatrix had been dominated by Effie Tinker since 1935, this domination resulting in a series of transfers of real and personal property from the testatrix to Effie, including the one litigated in *Getchell* v. *Tinker*, 291 Mich. 267.

Proponents, on the question of competency, produced certain letters and the diary of testatrix in her own handwriting. One of these, Exhibit "Q", reads in part as follows:

"February 26, 1936. (Date line written over in ink) Went to Mr. Smith's office and made my will. My Dorchester apartment in Detroit and my South Main Street home I willed to Walter. My oil royalties I willed to my brother Charley. These royalties I bought with my Strauss bonds which amounted to Fifty-three hundred dollars. The remainder of my bonds I willed to my sister, Mrs. Effie Tinker, and my personal property which comprises my clothing, jewelry, personal belongings, also I gave to my sister what money I may have in the bank. I paid Mr. Smith for making my will five dollars."

In order to refute the claim that undue influence was exerted by Effie Tinker, testimony was introduced that Walter had unsuccessfully attempted to get his mother to execute a power of attorney au-

thorizing him to sell any of her real estate. She did, however, give him power to manage her property and collect her rents. Becoming dissatisfied with his accounting, she caused a letter to be written to him offering him all the rentals of her apartment house if he would give her $25 per month. Upon his refusal to make a satisfactory arrangement, Mrs. Getchell brought a suit to cancel the agency agreement. This suit was settled by an agreement whereby Walter gave up his contract with his mother and transferred the management of her property to another.

The general rule as to competency is stated *In re Walker's Estate,* 270 Mich. 33, as follows:

"In general the requisite is that the testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will."

Mental competency is presumed. 3 Comp. Laws 1929, § 14212 (Stat. Ann. § 27.907). The burden of proof is upon contestants to show that the testatrix was mentally incompetent to make the will. *In re Curtis' Estate,* 197 Mich. 473, and *Brereton* v. *Estate of Glazeby,* 251 Mich. 234. Weakness of mind and forgetfulness are not sufficient to invalidate a will if it appears that testatrix's mind was capable of attention and exertion when aroused and was not imposed upon. The weak have the same right as the prudent and strong minded to dispose of their property. If the testamentary capacity exists, the court will not undertake to measure its degree. *Schneider* v. *Vosburgh,* 143 Mich. 476.

The court said in *Re Proctor's Estate*, 281 Mich. 633, quoting from *In re Cotcher's Estate*, 274 Mich. 154:

" 'It is to be expected that the mind of a person 80 years of age will not be as keen as in early youth, but evidence of some loss or impairment of mind does not of itself present a question of mental incompetence that should be submitted to a jury; nor does an inability to carry through a connected conversation present such a question. *In re Aylward's Estate*, 243 Mich. 9.' "

Mental incapacity must be established as of the time the will is made in order to invalidate it. *Pierce* v. *Pierce*, 38 Mich. 412, 413; *In re Weber's Estate*, 201 Mich. 477; *In re Cochrane's Estate*, 211 Mich. 370; and *In re Cottrell's Estate*, 235 Mich. 627.

Tested by the foregoing authorities, the record fails to show that Mrs. Getchell was incompetent when the will was made.

To establish undue influence, contestants must show some act or acts which caused the testatrix to dispose of her property contrary to her desire. *Maynard* v. *Vinton*, 59 Mich. 139 (60 Am. Rep. 276); and *In re McIntyre's Estate*, 193 Mich. 257. It must be shown that she acted under such coercion, compulsion, or constraint that her own free agency was destroyed. *In re Williams' Estate*, 185 Mich. 97. See, also, *In re Fay's Estate*, 197 Mich. 675, and *In re Spinner's Estate*, 248 Mich. 263. Undue influence cannot be established by proof of opportunity alone. *In re Cochrane's Estate, supra,* and *In re Murray's Estate*, 219 Mich. 70.

Our examination of the record requires the same conclusion reached by the trial judge that "aside from a few eccentricities, which by no means can be called insanity or incompetency such as would dis-

qualify one from, under the laws of the State of Michigan, making or executing a perfectly valid and legal will, the deceased was of sound mind and memory at the time she made her will and was legally competent for that purpose, and that no undue influence was used to procure the will.''

The order allowing the last will and testament and remitting the matter to the probate court for further proceedings is sustained, with costs to appellee.

Sharpe, Boyles, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.