*In re* HALLITT'S ESTATE.

BUCK *v.* HALLITT.

1. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.

On appeal from judgment for proponents, contrary to jury's verdict for contestants, the evidence presented must be considered in the light most favorable to contestants.

2. WILLS — MENTAL COMPETENCY — PRESUMPTIONS — BURDEN OF PROOF.

Since mental competency is presumed by statute, the burden of establishing lack of testamentary capacity is upon the contestants (2 Comp. Laws 1929, § 14212).

3. SAME—MENTAL COMPETENCY—EVIDENCE.

Expert medical testimony that testator was not competent to make a will at the time he made it, whether in answer to hypothetical questions or based on observations of testator made months before the will was made, is opinion evidence merely, and as against otherwise uncontroverted testimony that testator conferred with his attorney about his will and made a clear statement as to what he wanted, the property he owned and its disposal, is entitled to be given no weight whatever.

REFERENCES FOR POINTS IN HEADNOTES

[2] 57 Am. Jur., Wills, § 89.
[2] Prima facie case for proponent in will contest as shifting burden of proof. 76 A.L.R. 373.
[3] 57 Am. Jur., Wills, §§ 141, 142.
[3] Admissibility of evidence other than testimony of subscribing witnesses to prove due execution of will, or testamentary capacity. 63 A.L.R. 1195, 1204.
[4] 57 Am. Jur., Wills, § 64.
[5] 57 Am. Jur., Wills, § 149.

4. SAME—TEST OF MENTAL COMPETENCY.

>  A testator must, at the time of making his will, have suffi-
>  cient mentality to enable him to know what property he
>  possesses and of which he is making a testamentary disposi-
>  tion, to consider and know who are the natural objects of
>  his bounty, and to understand what the disposition is that
>  he is making of his property by his will.

5. SAME—MENTAL COMPETENCY—EVIDENCE.

>  Where 86-year-old testator is not shown to have failed to
>  understand and comprehend sufficiently the property he pos-
>  sessed and of which he was making testamentary disposition,
>  or that he did not have in his mind at the time, the natural
>  objects of his bounty, judgment upholding will leaving bulk
>  of his estate to his sister and only $10 to each of his three
>  sons is affirmed.

Appeal from Genesee; Gadola (Paul V.), J. Sub-
mitted April 6, 1949. (Docket No. 20, Calendar No.
44,345.) Decided May 18, 1949. Rehearing denied
June 29, 1949.

In the matter of the estate of James T. Hallitt,
deceased, Joseph R. Joseph presented the last will
of James T. Hallitt, deceased, for probate. Objec-
tions were filed thereto by sons of decedent. Contest
certified to circuit court. Verdict for contestants.
Judgment for proponents notwithstanding verdict.
Contestants appeal. Affirmed.

*Guy W. Selby* and *George Joseph,* for proponents.

*Transue & Hood,* for contestants.

BUSHNELL, J. This will contest, which was certi-
fied to the circuit court, resulted in a jury verdict
for contestants Ralph, Russell and Sprague Hallitt,
sons of James T. Hallitt, deceased. A judgment
for proponents Anna Buck (Hallitt's sister) and
Joseph R. Joseph, the executor of Hallitt's will, was
ordered by the trial judge, from which judgment
contestants have appealed.

Hallitt died on February 4, 1947, at the age of 86, leaving a last will and testament which was executed at Flint, Michigan on June 11, 1946. The will contains bequests of $10 each to the contestants; the remainder of Hallitt's estate, in the words of his will, was given—"to my beloved sister, Anna Buck, now residing in Toronto, Ontario, and in case she should predecease me, then to the heirs of her body."

It is claimed that when Hallitt executed his will he was "mentally incompetent and incapable of making and executing a will, and he was not of sound mind and memory at the time;" and that the evidence produced was sufficient to sustain the verdict of the jury; hence, the trial judge erred in granting the judgment *non obstante veredicto*.

The record shows that on several occasions during the last years of his life, Hallitt failed to recognize his immediate relatives, and that he occasionally became lost while attempting to visit their homes. It also appears that in his latter days he became irritable toward his children and grandchildren over what might be deemed inconsequential matters.

Three doctors testified in behalf of contestants. Dr. Kenneth R. Sandy examined Hallitt in 1938 and diagnosed his condition at that time as "senile dementia on the basis of arteriosclerosis." Because he did not see Hallitt thereafter he declined to express an opinion as to his mental competency on June 11, 1946, the date the will was executed; but he did say that senile dementia is a progressive disease and that one of its symptoms is the belligerent and antagonistic attitude of the patient toward those around him.

Doctor Clayton K. Stroup of Flint, Michigan, who attended Hallitt on December 12, 1946, after the will was executed and following Hallitt's fall on October 19, 1946, into a pit in a service station at Toronto, declined to say what his mental condition

would have been on June 11, 1946, but he did testify
that the arteriosclerotic condition at the time of his
examination indicated that he would have had peri-
ods of dementia and derangement 6 months prior
thereto, and that a change in one's attitude toward
one's children frequently accompanies arteriosclero-
sis and senile dementia.

Dr. Russell DeJong, a neurologist connected with
the department of neurology of the University of
Michigan, had never examined Hallitt. His response
to a hypothetical question was that in his opinion
the facts stated in that question described a typical
story of senile dementia, and that one so afflicted
would not be aware of the significance of what he
was doing nor of the natural objects of his bounty.
With respect to Hallitt's affection for his sister,
rather than for his sons, he said that patients af-
flicted with this disease "go back to their childhood
days and they talk much more, feel much closer to
the previous generation than to the present genera-
tion." Other witnesses had testified that Hallitt's
conversation frequently reverted to events and oc-
currences of his early years.

There is also testimony in the record with respect
to failure on the part of Hallitt to keep himself pre-
sentable, and also of some physical limitations on his
control of his bodily functions.

On the other hand, the record shows that he
bought his own clothes, took care of his own money
and bank accounts, made frequent trips alone to the
home of his son, Sprague, in Huron county and to
his sister in Toronto. He also knew the number of
shares of stock he owned, when the dividends were
payable, and he collected and deposited them in his
own bank account. When he conferred with his at-
torney about his will he made a clear statement as to
what he wanted, the property he owned and its dis-
posal.

Because the judgment for proponents was entered contrary to the verdict of the jury, for contestants, the evidence presented must be considered in the light most favorable to contestants. *In re Frazee's Estate,* 307 Mich. 404; and *In re Johnson's Estate,* 308 Mich. 366. Nevertheless, the burden of establishing lack of testamentary capacity is upon the contestants, because mental competency is presumed by statute. 3 Comp. Laws 1929, § 14212 (4 Comp. Laws 1948, § 617.58 [Stat. Ann. § 27.907]).

In *Re Aylward's Estate,* 243 Mich. 9, the headnote reads:

"Expert medical testimony that testatrix was not competent to make a will at the time she made it, whether in answer to hypothetical questions or based on observations of testatrix made months before the will was made, is opinion evidence merely, and, as against the otherwise uncontroverted testimony that testatrix dictated her will, and that she alone directed the forming of each of its provisions, is entitled to be given no weight whatever."

And in *Re Walker's Estate,* 270 Mich. 33, we said:

"The test of mental capacity to make a testamentary disposition of one's property has been stated many times by this Court. In general the requisite is that the testator must, at the time of making his will, have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will."

This record does not contain any evidence showing, or from which it can fairly be inferred, that Hallitt at the time he made his will did not understand and comprehend sufficiently the property he possessed and of which he was making testamentary disposition, or that he did not have in his mind at

the time the natural objects of his bounty. On the contrary, it appears from the testimony that he fully understood the disposition he was making of his property. We shall not repeat here what we have said recently in *Re Nickel's Estate,* 321 Mich. 519, or in other authorities such as *In re Ferguson's Estate,* 239 Mich. 616; *In re Aylward's Estate, supra; In re Alvord's Estate,* 258 Mich. 497; *In re Getchell's Estate,* 295 Mich. 681; *In re Grow's Estate,* 299 Mich. 133; *In re Johnson's Estate,* 308 Mich. 366; and *In re Thayer's Estate,* 309 Mich. 473.

The judgment is affirmed, with costs to appellees.

SHARPE, C. J., and BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.

DETHMERS, J., did not sit.