257 P.2d 556

### In re HEAZLE'S ESTATE.
### No. 7946.

Supreme Court of Idaho.
May 5, 1953.

Rehearing Denied June 10, 1953.

Perce Hall, Mountain Home, for contestants and appellants Violet Rodda and others.

Samuel Kaufman, Jr., Boise, for contestants and appellants Tom Rock and others.

74

J. W. Galloway, Boise, and Garrity & Garrity, Nampa, for petitioner-respondent William C. Heazle.

TAYLOR, Justice.

This is a second appeal in this cause. See In re Heazle's Estate, 72 Idaho 307, 240 P.2d 821. The first appeal was from an order of the district court admitting to probate the will dated May 15, 1947. Contestants urged that the earlier will was revoked by a subsequent instrument dated October 30, 1949. This contention the trial court overruled on the ground that the latter, not being entitled to probate, could not operate as a revocation. This court held that ruling to be erroneous and remanded the cause to the trial court with directions to receive further evidence, if either party desired to present such, on the question of competency of the deceased on October 30, 1949, to make a finding on that issue, and enter judgment accordingly. Conformable to the mandate the cause came on for further hearing. Proponents offered no further evidence and submitted the issue on the record made at the first trial. The

contestants produced, by way of stipulation, supplementing evidence submitted by them originally, the testimony of six witnesses who had known the deceased for many years, had observed her, and had numerous conversations with her in the month of October, 1949; that at that time, in their opinion, she knew the nature, character and extent of her property, her relatives and close friends, the natural objects of her bounty, and that she had mental capacity to know the nature and effect of executing a will. They also produced, in the same manner the testimony of twelve witnesses, including the six above mentioned, who had known the deceased for many years, during which time they had various associations and conversations with her, that in their opinion there was no change in her mental capacity during the period from May 15, 1947, to the last date they saw her in October, 1949. There were other lay witnesses who testified to her competency at the first trial. Also, at the first hearing the contestants were supported by the testimony of Dr. C. R. Lowe, a specialist in mental ailments, who gave his opinion that decedent was competent on October 30, 1949. His opinion, however, is based upon a hypothetical statement of the facts. He had never seen or examined the deceased.

The cause having been submitted, the district court found, among other things, that the deceased had executed a purported lease of her properties, under date of October 28, 1949, and the olographic will October 30, 1949; that immediately following the execution of the will on October 30th she was carried to a waiting automobile, taken to a hospital at Nampa, where she suffered a painful cancerous death on November 3, 1949; that because of her physical condition and due to her suffering, and her mental condition as reflected in the purported lease of her properties, she was on October 30, 1949, of unsound mind and mentally incompetent to revoke the will of May 15, 1947. The court then concluded that the will of May 15, 1947, is entitled to probate and entered its judgment accordingly. This appeal is from that judgment.

The sole issue before us is the sufficiency of the evidence to support the finding of incompetency on October 30, 1949.

■ "* * * the rule, that a finding or judgment will not be disturbed upon appeal where there is real and substantial conflict in the evidence on the issue of facts involved, applies to litigation over the validity of wills." In re Estate of Brown, 61 Idaho 320, at page 331, 101 P.2d 11, at page 16. Here the evidence is conflicting. Under the rule, we therefore limit our inquiry to a determination of whether there is substantial evidence to sustain the court's finding. The contestants' evidence is of undoubted substantial nature, and tends to support a finding of testamentary capacity. We recognize that age, physical infirmity, pain and suffering, or even par-

tial mental debility, in themselves or all concurring, are not necessarily sufficient to support a finding of mental incapacity. In re Rupert's Estate, 349 Pa. 58, 36 A.2d 500; Wooddy v. Taylor, 114 Va. 737, 77 S.E. 498; Towles v. Pettus, 244 Ala. 192, 12 So.2d 357; McWilliams v. Neill, 202 Ark. 1087, 155 S.W.2d 344; 57 Am.Jur., Wills, § 70.

 Testamentary capacity is a question of fact to be determined upon the evidence in the individual case. No general rule can be devised which would be a satisfactory standard for the determination of the issue in all cases. This court has held that "if a man is able to transact business, * * * he is clearly competent to make a will, but he may be competent to make a will and still not be able to transact business." Schwarz v. Taeger, 44 Idaho 625, at page 630, 258 P. 1082, at page 1084.

"Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them." 1 Page on Wills, Life. Ed., § 132, p. 268.

"* * * mind enough to understand the ordinary affairs of life, the nature and extent of his property, who comprised the objects of his bounty and how he was disposing of his property by the instrument he was executing." Gardine v. Cottey, 360 Mo. 681, 230 S.W.2d 731, 746, 18 A.L.R.2d 1100, at page 1119.

"In general the requisite is that the testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will." In re Johnson's Estate, 308 Mich. 366, 13 N.W.2d 852, at page 855.

Variously stating the general rule to the same effect, are the following: In re Larsen's Estate, 191 Wash. 257, 71 P.2d 47; Slater v. Phipps, 193 Okl. 267, 143 P.2d 133; In re Agnew's Estate, 65 Cal.App.2d 553, 151 P.2d 126; In re Getchell's Estate, 295 Mich. 681, 295 N.W. 360; In re Hayer's Estate, 230 Iowa 880, 299 N.W. 431; McLoughlin v. Sheehan, 250 Mass. 132; 145 N.E. 259; Morecraft v. Felgenhauer, 346 Ill. 415, 178 N.E. 877; Appeal of Martin, 133 Me. 422, 179 A. 655; Doyle v. Rody, 180 Md. 471, 25 A.2d 457; In re Ash's Estate, 351 Pa. 317, 41 A.2d 620; Wooddy v. Taylor, 114 Va. 737, 77 S.E. 498; Lindsey v. Stephens, 229 Mo. 600, 129 S.W. 641; Farmers Union Bank v. Johnson, 27 Tenn.App. 342, 181 S.W.2d

369; 57 Am.Jur., Wills, § 64, p. 81, et seq. This court applied the same rule in Re Estate of Brown, supra, on testimony to the effect that the deceased "did not have sufficient mind or mental capacity to comprehend intelligently the nature and effect of the will she was making, the estate or property she was undertaking to dispose of, or the relationship she had to the various persons who might expect to become the objects of her bounty; that she lacked the capacity to comprehend any of those things, and thus such capacity was lacking at all times after she was brought to the hospital."

In its inquiry into the capacity of the testatrix, the court may examine the purported will itself, and draw therefrom any inferences as to the mental capacity of the deceased, justified by its contents. Where the will appears on its face to be a rational act, rationally performed, it is presumed to be valid. In re Johnson's Estate, 20 Wash.2d 628, 148 P.2d 962; In re DeVine's Estate, 188 Okl. 423, 109 P.2d 1078; Gray v. Fulton, 205 Ark. 675, 170 S.W.2d 384; 2 Page on Wills, Life. Ed., § 770; 57 Am.Jur., Wills, § 91. On the other hand, where a will is unnatural, unjust, or irrational, such fact, though not controlling, may be taken into consideration in determining the competency of the author. In re Alexander's Estate, 111 Cal. App. 1, 295 P. 53; In re Gill's Estate, 14 Cal.App.2d 526, 58 P.2d 734; In re Cis-

sel's Estate, 104 Mont. 306, 66 P.2d 779; Appeal of Sturdevant, 71 Conn. 392, 42 A. 70; 57 Am.Jur., Wills, §§ 106 and 139; Anno. 110 A.L.R. 685 and 686.

The purported will in question is as follows:

"I revoke all former wills

"I Jean Heazle of Murphy & DeLamar, being of sound mind, make my last will and testament

"Wish my horses & Cattle run on my range as they always have been until the expiration of the Lease now in effect The relatives to run the Jean Heazle Horse & Cattle Co in cooperation with the Lease. Two Relatives to get paid for running my share of Lease at 8.00 per day, to be selected among themselves

"30th October 1949

 "Jean Heazle

"Witnesses:

"James H. Howard

"Victor C. Ford

"Bernard C. Prowett"

This instrument was written by the hand of the deceased under extreme conditions. When she commenced writing she was lying on a pallet on the floor of the Rock home. Then, according to the witness Ford, that proving difficult, she was lifted to a chair by a table where she finished the writing. She was suffering extreme pain from her cancerous condi-

tion. From the terms of the instrument, it is clear she undertook to make a will, and thought that was what she was doing. The witnesses were called to the Rock residence for the express purpose of witnessing her "will" and she declared the instrument to be her "will." For aught the instrument reveals, she may have had a sufficient understanding of the nature and extent of her property, and of her relatives and friends, who would be the natural objects of her bounty, although none of these are mentioned or described. Be that as it may, it would appear from the face of the document that she did not have an understanding of the nature, purpose and effect of a will.

The lease referred to is as follows:

"This Lease and Agreement entered into this 28th day of October, 1949, by and between Tom and Lillian Rock of Murphy, Idaho, the party of the first part and Jean Heazle and or the Jean Heazle Horse and Cattle Company, of Murphy, Idaho, the second party & or part Whereas the parties of the first part agree to lease from the party of the second part, all her lands, holding, cattle and horses and any property she might have, for a period of 10 years with the option to renew at the end of the ten (10) year period the lease for an additional 10 year period.

"It is agreed that Tom and Lillian Rock are to gather and winter the livestock this year and each succeeding year of this lease.

"It is agreed that Tom and Lillian Rock are to sell livestock to pay off the debt of William C. Heazle at once or as soon as possible after this date. Then in turn pay off the debt of Jean Heazle to John T. and Myrtle H. Shea.

"The parties of the first part are to keep up all taxes on all properties, both real and personal.

"It is the request and order that when William C. Heazle has been paid off the debt owed him by Jean Heazle, that he will deed back to Jean Heazle the lands in his name now (actually owned) by Jean Heazle.

"It is agreed that Tom and Lillian Rock are to receive one-half (½) of the increase of all livestock each year after this date, for their remuneration on this lease.

"It is further agreed that the parties of the first part will operate the Jean Heazle and or Jean Heazle Horse and Cattle Co., in a normal manner according to the custom of this country during the term of this lease."

Prior to the execution of this lease and on or about October 4th, the deceased had been advised by her physician that her

condition was incurable. And he testified that at the time she was "practically moribund."

These instruments, considered in the light of the physical condition of the deceased at the time, and the circumstances of their execution, are quite cogent evidence of a lack of testamentary capacity. Additionally, her attending physician, Dr. Kellogg, who had known her for "many, many years", and who had examined her on October 4th, and had her in the hospital for observation on October 21st and 22nd, and who attended her from the time of her return to the hospital on October 30th, to her death on November 3rd, testified that she was not competent. Dr. Saltzer, who saw her on October 21st and 22nd, and again between October 30th and her death, was also of the opinion she was not competent on October 30th.

Thus, there is substantial evidence supporting the finding of the trial court that the testatrix did not have testamentary capacity at the time she executed the instrument of October 30th. It was, therefore, not effective as a revocation. In re Heazle's Estate, supra.

Judgment affirmed.

Costs to respondent.

PORTER, C. J., GIVENS and KEETON, JJ., and MARTIN, District Judge, concur.