IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40479

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF DONALD LEE TAYLOR, DECEASED. | ) ) | |
| JEFFREY L. TAYLOR, | ) | 2013 Unpublished Opinion No. 781 |
| | ) | |
| Petitioner-Appellant-Cross Respondent, | ) ) | Filed: December 6, 2013 |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| MICHAEL JOSEPH TAYLOR, Personal | ) | OPINION AND SHALL NOT |
| Representative of THE ESTATE OF | ) | BE CITED AS AUTHORITY |
| DONALD LEE TAYLOR, | ) | |
| | ) | |
| Respondenet-Cross Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. Christopher M. Bieter, Magistrate.

Order of the district court on appeal from the magistrate division, affirming order granting summary judgment in estate, <u>affirmed</u> <u>and</u> <u>remanded</u>.

Ellis Law, PLLC, Boise, for appellant. Allen B. Ellis argued.

Eberble, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondent. Joseph H. Uberuaga, II, argued.

_____

MELANSON, Judge

Jeffrey L. Taylor appeals from the district court's order, entered in its appellate capacity, affirming the magistrate's grant of summary judgment in favor of Michael Joseph Taylor in Jeffrey's contest of their father's will for lack of testamentary capacity. Michael cross-appeals the district court's denial of his request for attorney fees on intermediate appeal. For the reasons set forth below, we affirm and remand.

1

# I.

## FACTS AND PROCEDURE

Donald Lee Taylor and his wife Bernice had eleven children during their marriage, all of whom are still living. Michael is the youngest of Donald's children and lived with Donald and Bernice for most of his life. Michael continued living with his parents when they moved to Idaho in 2006 and took care of them as their health began to deteriorate. Beginning shortly before Bernice's death in October 2009 and continuing through May 2010, several of Donald's children--including Jeffrey--began to notice some bizarre conduct by Donald. The conduct included delusional episodes, a preoccupation with carrying firearms, occasional violent outbursts, trouble with basic self-care, and trouble carrying on conversations and organizing his thoughts. Also, in the months immediately preceding and following Bernice's death, Donald occasionally thought that his wife was still alive or that he was living in Italy and dating someone.

In June 2010, Michael took Donald to a psychologist for an assessment of his cognitive faculties relating to his capacity to continue driving or carrying a concealed weapon. The doctor determined that Donald presented the essential elements of progressive dementia, exhibiting significant cognitive deficits that would impair his judgment and daily activities. The doctor noted that he did not believe Donald to be cognitively competent to make complex decisions in an informed manner. At his deposition, the doctor clarified that he believed it would be difficult for Donald to make complex financial decisions or engage in daily planning. He also opined that he believed it would be difficult for Donald to make a will, but admitted that he had not seen Donald for that purpose and needed to be educated as to the correct standard for making a will. On cross-examination, the doctor admitted his belief that Donald would definitely know his family, and the doctor admitted that he had not asked Donald about his assets or whether he understood the effect of a will. The doctor also specifically stated that he did not know whether Donald lacked testamentary capacity.

Michael took Donald to an attorney a month after the psychologist's assessment to have a will drafted. In his affidavit, the attorney stated that he questioned Donald regarding his family, his assets, and how he wished to dispose of those assets through his will. According to the attorney, Donald was able to name all eleven of his children without assistance and was able to identify his major assets. The attorney's affidavit states that Donald was adamant about leaving

his entire estate to Michael. When Donald returned to execute his will a few weeks later, the attorney again explained to Donald that his will would leave everything to Michael and nothing to his other ten children, which Donald stated was what he wanted. The attorney advised Donald that he could leave personal property to his other children through a personal property list, but he refused even after Michael had said that his siblings could have whatever they wanted. The attorney alleged that nothing in Donald's conduct indicated that he lacked testamentary capacity and stated that he had no doubt Donald had the requisite testamentary capacity to execute his will. The will execution was witnessed by a licensed clinical social worker who stated in his affidavit that there was nothing in Donald's conduct or statements that indicated issues with his mental competency.

Michael hired a caregiver to take care of Donald from July 2010 until his death in December 2010. The caregiver asserted in her affidavit that there had not been any issues with Donald's mental capacity and that Donald would often carry on long conversations with her, discussing his past and each of his children in detail. She also indicated that Donald seemed happy after he told her that he had gone with Michael to see a lawyer and sign some papers.

Following Donald's death, Michael sought appointment as personal representative of Donald's estate and submitted Donald's will for informal probate. Jeffrey objected to probate of the will, asserting that Donald lacked testamentary capacity. Jeffrey later petitioned for formal probate of a prior will and formal appointment of a personal representative, arguing that the will Michael submitted was invalid due to lack of testamentary capacity. Michael filed a motion for summary judgment, asserting that there was no genuine issue of material fact as to Donald's competency on the day the will was executed. The magistrate granted the motion after a hearing, finding that, although there was evidence of bizarre conduct and a diagnosis of progressive dementia, there was no evidence presented that indicated Donald lacked testamentary capacity when he executed his will, even when viewing the evidence in the light most favorable to Jeffrey. Michael filed a request for attorney fees and costs, but the magistrate did not rule on that request.

Jeffrey appealed the magistrate's ruling to the district court, which affirmed the decision. However, the district court denied Michael's request for attorney fees on appeal, finding that the appeal was not brought frivolously, unreasonably, or without foundation. Jeffrey again appeals,

and Michael cross-appeals the district court's denial of his request for attorney fees. Michael also requests attorney fees for this appeal.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court examines the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981). This Court then affirms or reverses the decision of the district court accordingly. *Barrett v. Barrett*, 149 Idaho 21, 23, 232 P.3d 799, 801 (2010).

When reviewing an order for summary judgment, this Court applies the same standard of review that was used by the trial court in ruling on the motion for summary judgment. *Vreeken v. Lockwood Eng'g, B.V.*, 148 Idaho 89, 101, 218 P.3d 1150, 1162 (2009). Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When an action will be tried before the court without a jury, the trial court as the trier of fact is not constrained to draw inferences in favor of the nonmoving party, but rather is entitled to reach the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 13, 232 P.3d 330, 334 (2010); *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). Drawing probable inferences under such circumstances is permissible because the court, as the trier of fact, would be responsible for resolving conflicting inferences at trial. *Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009); *Riverside Dev. Co.*, 103 Idaho at 519, 650 P.2d at 661. However, conflicting evidentiary facts must still be viewed in favor of the nonmoving party. *Losee*, 148 Idaho at 222, 220 P.3d at 578.

The party moving for summary judgment initially carries the burden of establishing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden

may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the nonmoving party to show, via further depositions, discovery responses, or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). The nonmoving party cannot rest upon mere speculation and must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. *Cantwell v. City of Boise*, 146 Idaho 127, 133, 191 P.3d 205, 211 (2008). A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact. *Finholt v. Cresto*, 143 Idaho 894, 897, 155 P.3d 695, 698 (2007). Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential of the party's case. *Cantwell*, 146 Idaho at 133, 191 P.3d at 211.

## III.
## ANALYSIS

### A.     Testamentary Capacity

Jeffrey alleges that the district court erred in affirming the magistrate's grant of Michael's motion for summary judgment. Specifically, Jeffrey argues that he presented sufficient evidence to give rise to a genuine issue of material fact regarding Donald's testamentary capacity when he executed the will.

The contestant of a will has the burden of establishing a lack of testamentary capacity. I.C. § 15-3-407. Testamentary capacity is a legal standard that is determined by examining the evidence in each case. *In re Estate of Conway*, 152 Idaho 933, 943, 277 P.3d 380, 390 (2012); *In re Heazle's Estate*, 74 Idaho 72, 77, 257 P.2d 556, 558 (1953). To have testamentary capacity, the testator must--at the time of making his or her will--have sufficient strength and clearness of mind and memory to know, in general and without prompting, the nature and extent of the property of which the testator is about to dispose, the nature of the act that the testator is about to

perform, and the names and identities of the persons who are to be the objects of the testator's bounty and the testator's relation towards them. *In re Estate of Stibor*, 96 Idaho 162, 164-65, 525 P.2d 357, 359-60 (1974); *In re Estate of Goan*, 83 Idaho 568, 573, 366 P2d. 831, 834 (1961). Age, physical infirmity, pain and suffering, or even partial mental debility, in themselves or all concurring, is not necessarily sufficient to support a finding of mental incapacity. *Heazle's Estate*, 74 Idaho at 75-76, 257 P.2d at 557-58. Indeed, a person may be unable to transact business, but may nonetheless be competent to make a will. *Estate of Conway*, 152 Idaho at 943, 277 P.3d at 390; *Heazle's Estate,* 74 Idaho at 76, 257 P.2d at 558.

Jeffrey argues that the diagnosis of progressive dementia made by a psychologist approximately seven weeks prior to the execution of the will raised a genuine issue of material fact when combined with the admittedly anecdotal accounts of Donald's bizarre behavior in the two years prior to execution of the will.[1] However, the material facts of this case are undisputed. Michael does not dispute the diagnosis of progressive dementia, and he acknowledged Donald's bizarre behavior in the preceding year. Michael also does not argue that Donald was competent prior to making the will, only that he was competent on the days Donald discussed the will with his attorney and executed it.

On the other hand, Jeffrey asserts that Donald's competency when the will was executed is a disputed issue of fact, yet Jeffrey presents no evidence that Donald lacked testamentary capacity on the day the will was executed. Jeffrey relies on accounts of Donald's prior mental difficulties and the diagnosis of progressive dementia to raise an issue of fact as to Donald's testamentary capacity when the will was executed.[2] Jeffrey fails to present any evidence

---

[1]     Jeffrey asserts that the magistrate and subsequently the district court made improper credibility assessments regarding the siblings' affidavits. For support, he cites to *Baxter v. Craney*, 135 Idaho 166, 172, 16 P.3d 263, 269 (2000). However, in *Baxter*, the Idaho Supreme Court's conclusion that the district court had made improper credibility assessments was based on the district court's actual comments in the record on the credibility of the affidavits, making clear that the district court had made an improper credibility assessment. Here, no such statements are alleged or indicated in the record. Indeed, Jeffrey's arguments are pure inference and conjecture, unsupported by the record.

[2]     Jeffrey also argues that the disposition of the will is unnatural or unjust because it disinherits ten of Donald's children and leaves his entire estate to Michael. Where a will appears on its face to be a rational act, rationally performed, it is presumed to be valid. *Heazle's Estate*, 74 Idaho at 77, 257 P.2d at 558. On the other hand, where a will is unnatural, unjust, or

6

showing either that Donald was incapacitated or affected by his dementia at the time the will was executed. Even assuming that Donald suffered from dementia on the day he executed the will, that fact is insufficient, standing alone, to raise a genuine issue of material fact without some evidence to suggest that the dementia rendered him incapable of knowing his family, the nature of his estate, or the effect his will would have on his family and his estate. *See Heazle's Estate*, 74 Idaho at 75-76, 257 P.2d at 557-58.[3] Although Jeffrey's affidavit alleged that Donald had on occasion mistakenly believed that his wife was still alive in the months following her death, this does not show that Donald did not know his family and his relationship to them when the will was executed. Indeed, the doctor who diagnosed Donald with progressive dementia stated that Donald would definitely know his family. None of the affidavits filed by Jeffrey alleged that Donald did not know the assets he owned, what he wanted to do with his property, or what his will said and the effect it would have. On the contrary, Michael presented the affidavits of the attorney who drafted the will, a licensed clinical social worker who witnessed the execution of the will, and Donald's caregiver who took care of him in his final months of life, all of whom attested that Donald knew his family, his assets, and the effect of his will at or near the time the will was executed. The magistrate found that, although the affidavits Jeffrey presented

---

irrational, such fact, though not controlling, may be taken into consideration in determining the competency of the author. *Id.* Although Jeffrey argues that this supports his argument that Donald lacked testamentary capacity, Jeffrey also admits that the will may not be unnatural or unjust given that Michael, the sole beneficiary under the will, was living with and caring for Donald prior to his death.

[3]      Several other states have reached similar conclusions. *See, e.g.*, *Neumeyer v. Estate of Penick*, 906 N.E.2d 1168, 1173 (Ohio Ct. App. 2009) (noting that evidence that the decedent suffered from dementia or Alzheimer's disease on the day the will was executed, standing alone, is insufficient to raise a fact issue as to a lack of testamentary capacity without some evidence that the disease rendered the decedent incapable of knowing her family or her estate or understanding the effect of her actions); *Horton v. Horton*, 965 S.W.2d 78, 86 (Tex. Ct. App. 1998) (noting that evidence of physical infirmities, without more, does not tend to prove that a testator is incapable of knowing his family or his property or understanding the effect of signing the will and that it is not enough to show that a testator lacked testamentary capacity on some days without also showing that the condition probably persisted on the day the will was executed); *In re Estate of McLean*, 99 P.3d 999, 1003-04 (Wyo. 2004) (noting that evidence of the testator's declining mental and physical health before the will was executed, or during the years later, is irrelevant, as the testator must only possess testamentary capacity at the time the will is executed).

established that Donald was experiencing cognitive difficulties prior to execution of the will, the affidavits failed to make a connection between those difficulties and the requirements for testamentary capacity on the day the will was executed.

Accordingly, without evidence indicating that Donald lacked testamentary capacity on the date the will was executed, Jeffrey has failed to make a showing sufficient to establish an essential element of his claim. The magistrate correctly concluded, viewing the evidence in a light most favorable to Jeffrey, that there was no genuine issue of material fact and that Michael was entitled to judgment as a matter of law.

**B.      Attorney Fees**

Michael cross-appeals, asserting that the district court erred in denying his request for attorney fees on intermediate appeal. Idaho Code Section 12-121 authorizes a court, in its discretion, to award attorney fees to the prevailing party in any civil action. An award of attorney fees on appeal under I.C. § 12-121 and I.A.R. 41 is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). However, an award of attorney fees under I.C. § 12-121 is not a matter of right. *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). When deciding whether attorney fees should be awarded under I.C. § 12-121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation. *Garner v. Povey*, 151 Idaho 462, 467-68, 256 P.3d 608, 613-14 (2011); *Michalk*, 148 Idaho at 235, 220 P.3d at 591.

Michael first notes that he requested attorney fees before the magistrate, but no ruling was ever made. Accordingly, he asks that the case be remanded for a decision on whether he is entitled to attorney fees before the magistrate. Because the decision of whether to award attorney fees to a prevailing party under I.C. § 12-121 is a matter committed to the sound discretion of the court at each level of a proceeding, and because Michael is the prevailing party as a result of the magistrate's grant of his motion for summary judgment, the case must be remanded to allow the magistrate to rule on Michael's request for attorney fees. *Cf. Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 380, 234 P.3d 699, 704 (2010) (holding that failure to rule on a timely and properly made motion is an abuse of discretion requiring remand).

8

Michael further asserts that the district court erred in denying his request for attorney fees on intermediate appeal and asks that we reverse the district court's decision in that regard. He argues that Jeffrey failed to raise any new issues or evidence on appeal. When a court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

After reviewing the record, there is no indication that the district court abused its discretion. The district court held that, although Jeffrey's claims failed as a matter of law, his assertions were not entirely unfounded, lacking any amount of support. The district court concluded that it was not left with an abiding belief that the issue was not fairly debatable or colorable. Accordingly, the district court did not abuse its discretion in denying Michael's motion for attorney fees.

Finally, Michael contends that the instant appeal--like the appeal to the district court--was frivolously brought because Jeffrey again failed to present any new arguments or evidence on appeal, entitling Michael to an award of attorney fees from this Court. Jeffrey responds that his assertions regarding testamentary capacity are not unreasonable in light of the evidence he presented of Donald's progressive dementia and his bizarre conduct in the year preceding execution of the will. Like the district court, we are not left with the abiding belief that Jeffrey's assertions were not at least colorable. Although he presented no evidence to connect Donald's diagnosis of progressive dementia and his past bizarre behavior to the requirements of testamentary capacity, it was not unreasonable to argue that the evidence at least suggested a genuine dispute of material fact. Accordingly, Michael's request for attorney fees on this appeal is denied.

## IV.

## CONCLUSION

Jeffrey has failed to present sufficient evidence to raise a genuine issue of material fact as to whether Donald lacked testamentary capacity on the day he executed his will. The magistrate correctly concluded that there was no genuine issue of material fact and that Michael was

9

entitled to judgment as a matter of law. Michael is entitled to a decision on his motion for attorney fees before the magistrate. The district court did not abuse its discretion in denying his motion for attorney fees on appeal. We also conclude that the instant appeal was not brought frivolously. As a result, we affirm the decision of the district court upholding the magistrate's grant of Michael's motion for summary judgment and denying Michael's request for attorney fees. However, we remand this case to the district court for remand to the magistrate for a decision on Michael's request for attorney fees before the magistrate. Costs, but not attorney fees, are awarded to Michael on this appeal.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**